*Decision will be entered under Rule 50.*

H. G. BUTLER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 100793. Promulgated March 18, 1941.

*H. Kennedy McCook, Esq.*, for the petitioner.
*Stanley B. Pierson, Esq.*, for the respondent.

**OPINION.**

HARRON: The parties present the question for determination on the premise that the sale of a capital asset is involved. They are in

agreement that petitioner realized a gain in 1937 of $25,950. Respondent computed the gain, in determining the deficiency, as follows:

Amount realized on sale—September, 1937_____ $36, 000
Purchase price of mineral rights—September, 1937_____ $5, 000
Development costs_____ 5, 050
                                                  10, 050

Capital gain as corrected (100 percent taxable since the property was not held more than one year)_____ $25, 950

Petitioner reported capital gain of $15,570, 60 percent of $25,950, as gain from sale of a capital asset held over two years. Respondent increased the capital gain by $10,380, thereby taxing all the gain. The question is whether that which was sold in 1937 was held for over two years or less than one year for purposes of determining the amount of capital gain taxable under section 117 (a) of the Revenue Act of 1936, and the answer to this question turns upon a determination of what petitioner sold.

Petitioner contends, but his argument is not clear, that under the 1937 agreement with Lay and under the transactions carried out in September of 1937 he transferred all his rights under the "Lease and Option Agreement" of September 15, 1934, and that, having held such rights under that agreement for more than two years, he is taxable on only 60 percent of the gain realized. Petitioner argues that, while he had the right to exercise his option to purchase the mineral rights from Crittenden, he "never took title to the property" and so he sold something other than title to the mineral rights to Lay and his principal, Ball. Petitioner appears to place reliance upon the factor that the deed to the mineral rights was from Crittenden to Ball. It is true that there were not two deeds, one from Crittenden to petitioner and one from petitioner to Ball, but in view of the fact that petitioner apparently exercised the option he had by giving his check for $5,000 to Crittenden, and that Ball did not pay anything to Crittenden, it appears that all parties concerned eliminated one step in an economy of effort and that the deed from Crittenden to Ball was in reality a deed on behalf of petitioner, conveying title which he had acquired under exercise of his option, to Ball, who exercised the option he obtained from petitioner. In our opinion, the substance rather than the form of the transaction is controlling.

We believe that petitioner can not say that he did not exercise his option under the lease and option agreement of September 15, 1934. Petitioner paid $5,000 to Crittenden. Neither Lay nor Ball paid anything to Crittenden. When petitioner paid $5,000 to Crittenden, Crittenden did not have thereafter any title to the mineral rights to convey to Ball except as agent for petitioner.

Petitioner is exceedingly technical in contending that he did not obtain title to the mineral rights which were conveyed to Ball. We

think the terms of his agreement of July 1937 with Lay are controlling. Nowhere in that agreement is any reference made to an assignment or a sale of all of petitioner's rights under the lease and option agreement of September 15, 1934, with Crittenden, or to a sale of his *option* under that agreement. Rather, the agreement, clear in its terms, deals with a sale by petitioner of the *fee title* to the *mineral rights* covered by the 1934 agreement with Crittenden. Of course, mineral rights are classed as distinct corporeal hereditaments which are subject to conveyance separate from other property. *Kincaid* v. *McGowan*, 88 Ky. 91; 4 S. W. 802; Thompson, Real Property, sec. 80. Also, while an option in itself is property and in some instances is assignable, the evidence here, the terms of the agreement with Lay, does not indicate in any way whatsoever that petitioner sold or agreed to sell his *option* to Lay, or that the $5,000 which petitioner paid to Crittenden was paid on behalf of Lay or his principal, Ball. Petitioner's testimony is to the effect that he paid the $5,000 out of his own funds. The evidence, outside the agreements and the checks involved, is meager. Petitioner appeared and gave testimony but his testimony is brief. Petitioner did not testify as to the details of what was done and neither has he, by his testimony or otherwise, shown that his delivery of his check to Crittenden was not in exercise of his option under his agreement of 1934 with Crittenden. Petitioner relies almost entirely upon the written agreements. The checks are almost the only bits of evidence to indicate what steps were taken. All of the evidence upon its face indicates that petitioner exercised his option, thereby acquiring title to the mineral rights, and Ball exercised his option under his agreement with petitioner and acquired title to the mineral rights from petitioner. All was done at about the same time and we believe it is immaterial that a deed to petitioner was not executed, and that the deed received by Ball was executed by Crittenden. No explanation is given and petitioner has failed to prove his contentions, assuming, *arguendo*, that his proof could have gone any further than it did go.

Also, petitioner testified that he received the $36,000 "for all my mineral rights." Petitioner's check to Crittenden has the notation "For purchase mineral rights under H. G. Butler land." The record indicates that the balance of the purchase price, or $35,000, was paid over to petitioner by the bank after he had purchased the mineral rights by payment of $5,000 and after delivery of the deed thereto to Ball.

When petitioner paid $5,000 to Crittenden he became the owner of the mineral rights both at law and in equity, *Walker* v. *Edmundson*, 111 Ga. 454; 36 S. E. 800; Thompson, Real Property, sec. 1297; and his leasehold merged with the fee. *M. Ernest Greenebaum, Jr.*, 27

B. T. A. 889; *Henry Boos*, 30 B. T. A. 882. The ownership resulting to petitioner from the exercise of his option and the payment of the purchase price does not relate back to the time when Crittenden originally gave the option to petitioner in 1934. *Helvering* v. *San Joaquin Fruit & Investment Co.*, 297 U. S. 496; *Arthur J. Coyle*, 17 B. T. A. 368.

It clearly appears that the property which petitioner sold was the fee title to mineral rights; that such fee title was held for a short time by petitioner, for less than one year; and that petitioner is taxable on the entire gain under section 117 (a). Respondent's determination is sustained.

*Decision will be entered for the respondent.*