**BARBER v. UNITED STATES.**

**TAYLOR v. UNITED STATES.**

Civ. Nos. 1247, 1248.

United States District Court
D. Minnesota, Fifth Division.

June 29, 1953.

Gannon & Morton, by John M. Gannon, of Hibbing, Minn., for plaintiffs.

H. Brian Holland, Asst. Atty. Gen., Andrew D. Sharpe, Paul S. McMahon, Allen A. Bowden, Sp. Assts. to the Atty. Gen., and Philip Neville, U. S. Atty., of St. Paul, Minn., for the United States.

NORDBYE, Chief Judge.

These are companion cases brought by two partners for recovery of additional income taxes paid for the calendar year 1946. The cases arose out of the same transaction and under the stipulation of facts in each case there is one issue common to both cases which will dispose of them.

The partners are retired mining company executives who conduct a mining supply and equipment business at Hibbing, Minnesota. On May 3, 1946, the partners obtained from the Niles Land Company for a sufficient consideration an option, effective May 14, 1946, to buy certain mineral land for $150,000. This option, as later extended, ran to November 30, 1946, by which date notice of intention to exercise the option had to be given.

On September 9, 1946, the partners gave the Oliver Iron Mining Company an option to buy the same land for $200,000. This option, as later extended, ran to November 20, 1946, by which date notice of intention to exercise the option had to be given.

Oliver Iron Mining Company gave notice to the partners on November 18th of its election to exercise its option to buy for $200,000; on November 20th the partners gave notice to the Niles Land Company of their election to exercise their option to buy for $150,000. In their notice and as their option agreement permitted, the partners nominated and designated the Oliver Iron Mining Company as the purchaser of the land in their place and stead. Instructions were given to the escrow agent, First and American National Bank of Duluth, by letter signed by the partners and the Niles Land Company, for consummation of the transaction. At the same time, a warranty deed for the land running from the Niles Land Company was handed to the escrow agent. On November 29, 1946, the escrow agent stated in a letter to the partners that on that day they had delivered the warranty deed to Oliver Iron Mining Company and had received checks totaling $200,000. The checks in the amounts of $150,000 and $50,000 were made payable to the Niles Land Company and the partners respectively. The partners gave a quitclaim deed to the Oliver Iron Mining Company on November 30th.

The issue is: Did the partners on November 29, 1946, sell to the Oliver Iron Mining Company an option to purchase mineral land from the Niles Land Company, resulting in a long-term capital gain, or did the partners sell the land itself, resulting in a short-term capital gain?

The partners claim that only an option was sold because that was all they ever had. In support of this claim they argue that (1) the original and renewal options from the Niles Land Company to them contemplate an assignment of the option to purchase; (2) since they never paid the purchase price of $150,000 to the Niles Land Company, they never exercised their option to purchase or acquired the land; and (3) the deed went right from the Niles Land Company to the Oliver Iron Mining Company because the land was sold by Niles directly to Oliver.

The Government concedes that the partners' option could have been assigned, but takes the position that it was not—that the end result of the transaction on November 29th was a sale of land by the partners to the Oliver Iron Mining Company.

The statutes involved here are subdivisions (a) (2), (4) and (b) of Section 117 of the Internal Revenue Code, 26 U.S.C.A. § 117, which provide,

"§ 117. Capital gains and losses

"(a) Definitions. As used in this chapter—

* * * * *

"(2) Short-term capital gain. The term 'short-term capital gain' means gain from the sale or exchange of a capital asset held for not more than 6 months, if and to the extent such gain is taken into account in computing gross income;

* * * * *

"(4) Long-term capital gain. The term 'long-term capital gain' means gain from the sale or exchange of a capital asset held for more than 6 months, if and to the extent such gain is taken into account in computing gross income;

\* \* \* \* \*

"(b) Percentage taken into account. In the case of a taxpayer, other than a corporation, only the following percentages of the gain or loss recognized upon the sale or exchange of a capital asset shall be taken into account in computing net capital gain, net capital loss, and net income:

"100 per centum if the capital asset has been held for not more than 6 months;

"50 per centum if the capital asset has been held for more than 6 months."

If all that was sold was the option to purchase land, the transaction would come within the terms of Section 117(a) (4) of the Internal Revenue Code relating to the sale or exchange of a capital asset held for more than six months because in that event the option would have been held by the partners more than six months, i. e.; from May 14, 1946, to November 29, 1946. On the other hand, if a sale of land was made, it would have resulted in a short-term capital gain under Section 117(a) (2) of the Internal Revenue Code since the land itself had been acquired at the time of the exercise of the partners' option which was much less than six months.

An examination of all the stipulated evidence fairly shows that a sale of the land was made by these partners on November 29, 1946, within the purview of Section 117(a) (2). These partners intended to sell land and the Oliver Iron Mining Company expected to purchase land—the option contract between the partners and the Oliver Iron Mining Company contemplated the sale of land. The option contract given Oliver provided, among other things,

"\* \* \* we, the Sellers, hereby grant unto Oliver Iron Mining Company \* \* \* the right and option \* \* \* to purchase \* \* \* the following described lands \* \*.

"\* \* \* the Sellers will deliver to the Optionee a merchantable abstract of title to said premises \* \* \*."

There is no limitation in the option contract to the sale of only an option to purchase land. The option is to purchase the described land itself. Had the partners intended the sale of an option to purchase land, it would have been an easy matter so to provide in the option contract. The partners having exercised their option with the Niles Company, they did not assume to sell the option. It seems apparent that they intended to sell to Oliver the rights they obtained in the real estate in pursuance of their option exercise.

Oliver gave notice of exercising the option by letter dated November 18, 1946. That letter provided, among other things,

"\* \* \* the undersigned has elected \* \* \* to exercise the option \* \* \* granted by you to the undersigned to purchase \* \* the following described lands \* \*.

"The purchase price for the above described lands will be paid upon delivery of a warranty deed to said premises conveying good title thereto to Oliver Iron Mining Company."

In exercising their option on November 20, 1946, the partners gave a written notice to the Niles Company which, among other things, provided,

"You are advised that the undersigned, Max H. Barber and William L. Taylor, of Hibbing, Minnesota, have elected and do hereby elect to exercise the option dated September 6, 1946, granted by you to them to purchase for the sum of One Hundred Fifty Thousand Dollars ($150,000) the following described lands \* \* \*."

"The undersigned optionees have nominated and designated Oliver

Iron Mining Company as the purchaser of said lands in their place and stead, and hereby request you to deliver at the First and American National Bank, Duluth, Minnesota, a Warranty Deed conveying said lands to said Oliver Iron Mining Company, a corporation. The aforesaid purchase price for the above described lands will be paid upon delivery as aforesaid of such Warranty Deed conveying good title to said premises to said Oliver Iron Mining Company."

When an optionee exercises his option to purchase, as indicated above, such action seems entirely inconsistent with any intention to assign or sell the option. And if there is language in the option from Niles contemplating an assignment of the option, the partners did not proceed thereunder. It is not without at least some significance that the partners, at the request of Oliver when the deal was consummated, gave a quitclaim deed to the premises to Oliver. A mere assignment of a sale of an option to land generally would not suggest the obtaining of a quitclaim deed from the assignors or sellers. Moreover, when an option or contract is sold or assigned, the optionees do not themselves exercise the option as was done in this matter. Realistically, and giving due consideration to the substance rather than the form, it seems persuasive that the parties merely intended to eliminate certain unnecessary and expensive incidents in the consummation of the real estate transfers between the Niles Company and the partners and between the partners and the Oliver Company. No good purpose would have been served in obtaining a deed from the Niles Company to the partners with the expense of revenue stamps on a $150,000 consideration and then incur the additional burden of revenue stamps on a $200,000 consideration on a deed from the partners to Oliver. When exercising their option with the Niles Company, the partners could have proceeded either by such a circuitous

method or direct a deed to be given by Niles to their nominee. They selected the latter method. But by either method within the meaning and spirit of Section 117(a) (2), they would acquire and hold a capital asset, and the capital asset which was sold was the interest the partners acquired in the land by the exercise of the option. Here, we do not encounter an ambiguous or doubtful intent or meaning in the language of a tax statute which, as the plaintiffs argue, should be construed favorably to the taxpayer. The interpretation which must be given here is to the factual situation that the partners themselves voluntarily created.

Research has not disclosed any applicable authority other than H. G. Butler v. Commissioner of Internal Revenue, 1941, 43 B.T.A. 1005, which was cited and relied upon by both parties. In that case an option contract was involved which gave the optionee the right within a fixed period to purchase land at an agreed price. Within the period of the option, the optionee gave an option to a third party to buy the land at a fixed price. The third party exercised his option to buy the property. The optionee then exercised his option with the property owner and paid the purchase price, after which the original owner deeded the property directly to the third party, at the direction of the optionee. Under the option contract the optionee had the right to name any party he might choose as the record purchaser of the property. It was held under these facts that the transaction resulted in a purchase of the land by the optionee and a resale by him to the third party.

The optionee, who was the petitioner in the Butler case, made contentions similar to those of the partners in the instant cases, to the effect that he never owned title to the property and that all he sold was his option. The Board of Tax Appeals found that the petitioner had acquired rights to the property upon the exercise of the option and that such rights were subsequently sold to the third party, notwithstanding the fact

that legal title had not been in his name. The Board found no evidence that there was a sale of the option itself.

The partners have attempted to distinguish the Butler case on the theory that there the payment had been made by the petitioner out of his own funds. Even though the partners here did not make any direct payment to the Niles Land Company out of their own funds, the essence of the transaction was the same as that in the Butler case. In both cases the option was exercised formally by the optionees by their affirmative action. Since the partners sold a capital asset of real estate to the Oliver Iron Mining Company on November 29, 1946, which they acquired by the exercise of their option on November 20, 1946, the proceeds were a short-term capital gain under Section 117(b) of the Internal Revenue Code and one hundred per cent of the gain had to be taken into account in computing net capital gain. The additional income tax assessments against the partners were legally and properly assessed and collected.

Findings of fact and conclusions of law consistent herewith may be presented by the defendant.

An exception is allowed.