**Max H. BARBER, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**William L. TAYLOR, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**Nos. 14980, 14981.**

United States Court of Appeals
Eighth Circuit.

Sept. 14, 1954.

Rehearing Denied Oct. 8, 1954.

---

Before SANBORN, JOHNSEN and COLLET, Circuit Judges.

JOHNSEN, Circuit Judge.

Two taxpayers, as partners, made a profit, during the calendar year 1946, on the sale of a capital asset. Each returned his share of the profit, for income-tax purposes, as a long-term capital gain. The Commissioner assessed a deficiency against each, on the ground that the profit had constituted a short-term capital gain only.[1]

Each paid the tax deficiency and thereafter sued, under 28 U.S.C.A. § 1346(a) (1), for refund. The District Court denied recovery, 115 F.Supp. 349, and each has appealed. The cases were heard together in the trial court, and the appeals have similarly been consolidated here.

The taxpayers, for a contractual consideration, had obtained an option, from Niles Land Co., running from May 14, 1946, to November 30, 1946, to purchase certain mineral lands, in the State of Minnesota, for a cash price of $150,000, with the privilege, on exercise of the option, to "designate the nominee to whom conveyance is to be made, if not to the Optionees personally." The taxpayers later, for a contractual consideration, gave Oliver Iron Mining Co. an option, from themselves, running from August 15, 1946, to November 20, 1946, to purchase the lands for a cash price of $200,-000.

On November 18, 1946, Oliver Iron Mining Co. gave notice to the taxpayers of its election to exercise its option. On November 20th, the taxpayers in turn gave notice to Niles Land Co. of their election to exercise their option, with a statement in the notice that they "nominated and designated Oliver Iron Mining Company as the purchaser of said lands in their place and stead."

Josiah E. Brill, Minneapolis, Minn. (Robert C. Morton, Duluth, Minn., and John M. Gannon, St. Paul, Minn., on the brief), for appellants.

Louise Foster, Sp. Asst. to Atty. Gen. (H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Sp. Asst. to Atty. Gen., George E. MacKinnon, U. S. Atty., and Alex Dim, Asst. U. S. Atty., St. Paul, Minn., on the brief), for appellee.

1. Under section 117 of the Internal Revenue Code, 26 U.S.C.A. § 117, "short-term capital gain" is gain derived from the sale or exchange of a capital asset held for six months or less, and "long-term capital gain" is gain derived from the sale or exchange of a capital asset held for more than 6 months. In general, the statute requires the former to be taken into account on a 100% basis, while the latter is permitted to be taken into account on a 50% basis merely, in the computation of capital gains, capital losses and net income, for tax purposes.

On November 25th, Niles Land Co. and the taxpayers joined in placing in escrow, with a local bank, a warranty deed running from Niles Land Co. to Oliver Iron Mining Co., for delivery to the latter upon payment by it to the bank, of $150,000 "for account" of Niles Land Co., and of $50,000 "for account" of the taxpayers. Oliver Iron Mining Co. paid the bank the $200,000 on November 29th, in check for $150,000 to the order of Niles Land Co. and check for $50,000 to the order of the taxpayers, and the bank delivered the warranty deed to it. On November 30th, Oliver Iron Mining Co. requested and was furnished a quit-claim deed from the taxpayers and their wives.

The question which the District Court was called upon to resolve was whether the sale made by the taxpayers to Oliver Iron Mining Co. was one of their option right merely or one of the land itself. If the sale was of the option right merely, then the $50,000 profit represented a long-term capital gain, since the taxpayers had held the option for more than 6 months prior to November 18th, when the purchase obligation of Oliver Iron Mining Co. became created. If the sale was of the land itself, then the taxpayers had a short-term capital gain only, for there was no basis on which any aspect of actual ownership could be said to have existed in them, until the exercise of their option against Niles Land Co. on November 20th.

The District Court held that what the taxpayers had sold to Oliver Iron Mining Co. was legally the land itself—not their option right—and that their $50,000 profit accordingly represented not a long-term, but a short-term, capital gain only. The controlling question here is whether that conclusion can be contended to be clearly erroneous in the situation. We think that it cannot properly be declared so to be.

Among the probative elements relied upon by the trial court in reaching its conclusion were the facts that the option from the taxpayers granted, without any ambiguity, the right to Oliver Iron Mining Co. "to purchase for the sum of Two Hundred Thousand Dollars ($200,000) the following described lands;" that in connection with the right granted to purchase the land the instrument referred to the taxpayers as "Sellers"; that it contained no mention of the existence of the taxpayers' option right, nor did it in any other demonstrable manner purport to relate the obligation, which would become fixed against the taxpayers upon an exercise by Oliver Iron Mining Co. of its option, to the questions of whether the taxpayers held an option right or how that option right was to be exercised; that the option given by the taxpayers required them to deliver to Oliver Iron Mining Co. "a warranty deed conveying good title," as a matter of absolute obligation on their part, regardless of what right they might or might not have in the land itself, and so necessarily had the effect of constituting the sale to Oliver Iron Mining Co. as one of the property itself and not of the taxpayers' mere option right; that the taxpayers themselves had further given confirmation to the lack of any created legal relationship between their own option right and the right existing in favor of Oliver Iron Mining Co. by their act of making exercise of their option on the basis of their own prerogative right to do so, without having Oliver Iron Mining Co. join in any way as a party thereto, so that the situation stood legally as one of contractual obligation for purchase price and conveyance between the taxpayers and Niles Land Co. only, with the taxpayers thus being left in a position to claim breach and damages for any failure of Niles Land Co. to make conveyance to Oliver Iron Mining Co. as their nominee; and also that the taxpayers had joined with Niles Land Co. in setting up an escrow arrangement, which served the purpose not merely of insuring that they would conveniently get their $50,000 profit, but also of facilitatingly effecting a concurrent discharge of the obligations which they had incurred both to Niles Land Co. and to Oliver Iron Mining Co., and at the same time too, of course, of enabling them to save the expense of rev-

enue stamps for a separate, direct conveyance.

Other probative aspects, supportive of the trial court's conclusion that the taxpayers had sold the land and not their option right, might also cumulatively be mentioned. Thus, in connection with the taxpayers' agreement to furnish Oliver Iron Mining Co. with "a warranty deed conveying to the Optionee good merchantable title to said lands free and clear of all encumbrances," there was no provision requiring the purchaser, unless it voluntarily chose to do so, to accept the warranties of anyone else except the taxpayers themselves. Nor was there any provision relieving the taxpayers of liability for failure to furnish Oliver Iron Mining Co. with proper title, from any inability on their part to obtain such a title from Niles Land Co. on the basis of their option, or for any other lack of fault on their part in making good their obligation. To the contrary, the taxpayers explicitly bound themselves to deliver a conveyance of good title and to cure any possible defect that might marketably exist in that title, no matter what they might have to do to accomplish this result.

Again, the consideration, as expressed in the contract, was an entirety for the conveyance of title. Oliver Iron Mining Co. agreed to pay for a delivery of the complete title only, and not apportionably or separately for the assimilating in it of such various constituent elements or constitutive interests as might happen to be outstanding. It was without any right to say how or among whom the purchase price should be distributed or apportioned. And, further, on the question of whether there existed any legal relationship between the two options, it also, cumulatively at least, could properly be noticed that the taxpayers had not granted Oliver Iron Mining Co. an option right coextensive with their own, for theirs ran to November 30th, while the one they gave to Oliver Iron Mining Co. extended only to November 20th. Thus, this fact too would be capable of contextual indication that the taxpayers desired and intended to retain at all times a direct personal hold upon their option right, as a basis for being able to establish a privity and an obligation on the part of Niles Land Co. to them personally in the fulfillment of the provisions of their option.

All of these things together plainly give the trial court's conclusion, that the taxpayers were sellers of the land and not of their option, a sound legal reality, as a matter of both adequate form and substance, in the situation. Indeed, it is a bit difficult to see how the court would have been able to reach any other conclusion than it did.

The taxpayers' argument, that they necessarily must have sold their option right, because they never had the land to sell, is legally specious, for, as previously pointed out, their contract obligated them to provide Oliver Iron Mining Co. with title, no matter how Oliver Iron Mining Co. might subsequently be willing to allow the conveyance of that title to be effected, so that whether they ever actually held legal title or not to the property could not be said to be decisive of what it was that they had agreed to sell. And the fact that, after the exercising by them of their option right, without having the deed made to themselves as they could have insisted be done, the taxpayers gave, at the purchaser's request, a quit claim deed from themselves and their wives, would at least lend no support to the taxpayers' contention that the transaction was in legal nature and result simply an assignment of their option right.

Equally artificial is the taxpayers' argument that what they exercised was not their option to purchase the land but simply "their option to require Niles to sell to Oliver." The only option granted them by their contract was "the right * * * to purchase * * * the following described lands," with a provision that, "If the Optionees elect to purchase said premises, they shall give notice thereof in writing * * * and * * * shall * * * designate the nominee to whom conveyance is to be made, if

not to the Optionees personally." The notice given by the taxpayers to Niles Land Co. stated that they "do hereby elect to exercise the option * * * granted by you to them to purchase * * * the following described lands," and then added, in a separate paragraph, that they "have nominated and designated Oliver Iron Mining Company as the purchaser of said lands in their place and stead," with a "request" that Niles Land Co. execute a warranty deed in favor of Oliver Iron Mining Co. and deliver it to a named local bank, and with a promise or assurance on the part of the taxpayers that the "purchase price * * * will be paid upon delivery as aforesaid of such Warranty Deed * * *."

The taxpayers do not, of course, argue that they meant this notice to transfer to Niles Land Co. the obligation of Oliver Mining Co., created by the exercise of its option, for payment of the $200,000 purchase price. Nor had any privity between Oliver Iron Mining Co. and Niles Land Co. been in any other way created, that could be said to have legally given rise to a liability for $150,000 to Niles Land Co. on the part of Oliver Iron Mining Co., should the latter for any reason thereafter have refused to go through with its deal with the taxpayers.[2] Thus, when the taxpayers exercised their option, they, and only they, were the ones who could be said to have become legally subject to an obligation to Niles Land Co. for payment of the $150,-000 purchase price.

Niles Land Co. had not given the taxpayers the right to designate a nominee to receive conveyance of the title and thereby be released from obligation or liability for the agreed purchase price. The right to "designate the nominee to whom conveyance is to be made, if not to the Optionees personally," was, as has been indicated, not a separate or independently exercisable right, but one which was a part or an incident merely

of the exercising by the taxpayers of their right to purchase and of the creation of an obligation for the purchase price in consequence of the exercise of that right. The taxpayers did not, as they contend, have an "option to require Niles to sell to Oliver," within the legal implications of the term "sell".

It also has been argued in effect that the situation here was, in all its practical aspects and results, equivalent to an assignment by the taxpayers of their option right and that it should therefore realistically be so regarded. But the fruits of business transactions are not required to be viewed for tax purposes on the basis of practical aspects or results alone, if they involve the creation or the use of legal realities, in both form and substance, on which a different and greater tax liability can exist. The taxing authorities have the general right to assess income taxes on the basis of the sound legal and equitable realities which have existed in the taxpayer's situation. They may also at times, of course, pierce the mere form of apparent legal reality and examine the practical or economic actualities of what the taxpayer has done, where these outweigh the substance of the legal reality. But the choice of the tax course to be applied in any such situation, where there may be a right to a choice, is the Government's, not the taxpayer's.

These principles have had their most frequent application and emphasis in the use by a taxpayer of corporate form and means. See e. g. Higgins v. Smith, 308 U.S. 473, 60 S.Ct. 355, 84 L.Ed 406; Commissioner v. Court Holding Co., 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981; Palcar Real Estate Co. v. Commissioner, 8 Cir., 131 F.2d 210; Porter Royalty Co. v. Commissioner, 6 Cir., 165 F.2d 933; Railway Express Agency v. Commissioner, 2 Cir., 169 F.2d 193, 195; Kaufmann v. Commissioner, 3 Cir., 175 F.2d 28. But other legal realities, from sufficient

---

**2.** Legal privity would of course have existed between Oliver Iron Mining Co. and Niles Land Co., if the taxpayers had in fact assigned their option right to Oliver Iron Mining Co. and the latter had authorized the taxpayers to exercise the option in its behalf.

form and substance, such as those involved here, which a taxpayer has employed in the production of income, are equally as unescapable by him in the nature of the tax result to which they may give rise.

The judgment of the District Court in each of the two cases is affirmed.