Louis D. BLICK and Anne Blick,
Petitioners,

v.

COMMISSIONER OF INTERNAL REV-
ENUE, Respondent.

No. 12913.

United States Court of Appeals
Third Circuit.

Argued Oct. 28, 1959.

Decided Nov. 19, 1959.

Harry Weltchek, Elizabeth, N. J.
(Ernest Prupis, Elizabeth, N. J., Ber-
tram Gittler, New York City, on the
brief), for petitioners.

T. Guy Tadlock, Washington, D. C.
(Charles K. Rice, Asst. Atty. Gen., Lee
A. Jackson, Meyer Rothwacks, Louise
Foster, Attys., Dept. of Justice, Wash-
ington, D. C., on the brief), for respond-
ent.

Before GOODRICH and KALODNER,
Circuit Judges, and WOOD, District
Judge.

GOODRICH, Circuit Judge.

This is an appeal from a decision of
the Tax Court which refused the tax-
payers [1] long term capital gain treatment

---

1. Louis D. Blick and Anne Blick, the tax-
payers, are husband and wife but, since
the things done in this transaction were
done by Louis Blick alone, he will be re-
ferred to as the taxpayer.

on a transaction concerning real estate in Plainfield, New Jersey. 31 T.C. 611 (1958).

The transaction out of which this litigation arises occurred in 1951. Louis Blick is a real estate broker with an office in Elizabeth, New Jersey. Around 1948, he entered into agreements with the owners of four lots at the corner of East Front Street and Elm Place, Plainfield, New Jersey. Although in the form of contracts to purchase, these documents relinquished, on the part of the seller, any claim to specific performance and limited damages on nonperformance by Blick to the amount of down payment made. The parties have called the agreements "options" and that term will be used in discussing the case, regardless of whether it is exact in description or not. These "options" were renewed periodically. Mr. Blick had also secured in 1948 and 1949 similar "options" on other lots in this area, but these had expired and were not renewed. At the time of the transaction in question Blick had unexpired options on the four corner lots.

In 1951 taxpayer was approached by a representative of a large real estate firm representing R. H. Macy & Co. which was considering opening a branch of its Bamberger division in Plainfield. The purchaser was interested in the corner lots just described and also the lots adjacent to them. A price of $850,000. for the full parcel was agreed upon. On May 9, 1951, Blick and Mrs. Blick executed with Macy a written agreement. In this the taxpayers appear as sellers and Macy appears as purchaser. By the terms of the document the Blicks were to convey to Macy not only the four lots on which Blick had an option at the time but the surrounding lots as well so as to make up the parcel of land which Macy wanted for its business. This agreement is set out in its entirety in the opinion of the Tax Court, 31 T.C. at page 612.

Following the execution of this agreement, Blick went to work and secured agreements to convey from the owners the remainder of the lots in the desired parcel. The closing took place August 1, 1951. Deeds from the owners were made directly to Macy. The owners were all paid the agreed selling prices and the taxpayer was paid his commission. The four corner lots already described had been held under option by the taxpayer for more than six months. The other pieces of property had not.

The taxpayer claims that his profit on the transaction should be taxed as a long term capital gain under Section 117(b) of the Internal Revenue Code of 1939,[2] by allocating all profit from the transaction to the sale of the four lots on which he held options at the time of the agreement with Macy and by considering the sale as one of the "options" rather than of the land. The Tax Court denied long term capital gain treatment. We agree.

The theory of the taxpayer is that he sold the options to Macy for the given price and that everything he did thereafter in securing the agreements from the other lot owners was gratuitous. But the Tax Court pointed out that the agreement in May was not the be all and end all of what the taxpayer had to do. This contract, be it remembered, was drawn in terms of a contract for sale on taxpayer's part and purchase on Macy's part.

2. "§ 117. Capital gains and losses

"(a) Definitions. As used in this chapter—

\*　　\*　　\*　　\*　　\*

"(4) Long-term capital gains. The term 'long-term capital gain' means gain from the sale or exchange of a capital asset held for more than 6 months, if and to the extent such gain is taken into account in computing gross income;

"(5) Long-term capital loss. The term 'long-term capital loss' means loss from the sale or exchange of a capital asset held for more than 6 months, if and to the extent such loss is taken into account in computing net income;

\*　　\*　　\*　　\*　　\*

"(b) Deduction from gross income. In the case of a taxpayer other than a corporation, if for any taxable year the net long-term capital gain exceeds the net short-term capital loss, 50 per centum of the amount of such excess shall be a deduction from gross income. \*　\*　\*"
Int.Rev.Code of 1939, § 117, 26 U.S.C.A. § 117.

The Tax Court points out, correctly we think, what other things the taxpayer was to do. The deed was to be executed at seller's expense. The seller promised the purchaser at the closing a certified statement showing arrangements with month to month tenants on any part of the property so occupied. Closing was conditioned on the issuance of a title insurance policy satisfactory to the purchaser. Taxpayer was to discharge due assessments, if any. The risk of loss was on the seller. The seller agreed to give satisfactory assurance that there would be no default under any of the purchase agreements. Seller also warranted appropriate zoning of the premises. The final fact conclusion on the part of the Tax Court was that "no part of the net gain realized by petitioner was in consideration of the sale, assignment or other transfer of options or contracts." 31 T.C. at page 616.

The case depends on its facts. If the facts bring taxpayer's transaction within the long term capital gain provision he is entitled to it; otherwise not. The written agreement between Blick and Macy was couched in terms of vendor and purchaser. It is immaterial, we think, that the deeds given to Macy came from the individual lot holders. It is clear from the contract between taxpayer and Macy that the former was to make the necessary arrangements so that Macy would get the entire parcel. Macy was not interested in taxpayer's option on the corner lots alone; it wanted the whole parcel or nothing at all. Taxpayer got together the package which Macy wanted to buy. Macy paid for it; each party got what was coming to him. It would be a misnomer of the transaction, we think, to call what was done a sale of options to some lots and gratuitous services to aid the purchaser in acquiring the others.

Insofar as authorities are helpful in the situation, 1941, H. G. Butler, 43 B.T.A. 1005 and Barber v. United States, D.C.D.Minn.1953, 115 F.Supp. 349, affirmed 8 Cir., 215 F.2d 663, certiorari denied, 1954, 348 U.S. 897, 75 S.Ct. 218, 99 L.Ed. 704, may be referred to. But the main point is that the transaction was interpreted as a unitary one and we think that interpretation is sound.

The judgment of the Tax Court will be affirmed.