Herman J. MILLER, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 16689.

United States Court of Appeals Eighth Circuit.

Oct. 26, 1961.

Alvin D. Lurie, New York City, for petitioner. Jacob Rabkin, New York City, was with him on the brief.

Joseph Kovner, Atty., Dept. of Justice, Washington, D. C., for respondent. Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Melva M. Graney, Attys., Dept. of Justice, Washington, D. C., were with him on the brief.

Before GARDNER, VOGEL and VAN OOSTERHOUT, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

Taxpayer, Herman J. Miller, has filed timely petition for review of the decision of the Tax Court determining deficiencies in his income tax for the years 1950 and 1951. The issue for each of such years is identical and based upon the same facts. The deficiency computed is based upon an undisputed net profit of $264,625 taxpayer received as a result of a sale he made to Westmoreland Steel Corporation (hereinafter Westmoreland). Taxpayer had acquired from the Denison heirs an option for the acquisition of certain real estate. The underlying issue here presented is whether the subject matter of the taxpayer's sale to Westmoreland was the option which taxpayer had obtained from the Denison heirs and held for more than seventeen months or whether it was the sale of the real estate covered by the option. Taxpayer contended that his profit resulted from the sale of the option. He reported such profit as a long-term capital gain under 1939 Internal Revenue Code, § 117(a) (4) and § 117(b), 26 U.S.C.A. § 117(a) (4), (b).

The Commissioner's contention, upheld by the Tax Court, is that the taxpayer did not sell the option but sold the land covered by the option.

There appears to be no dispute as to the applicable tax law. If taxpayer sold the option, which he admittedly held more than six months, he properly reported his profit as a long-term capital gain and is liable for no deficiency. If, however, he sold the land covered by his option, he held the real estate for less than six months and his profit is subject to short-term capital gains treatment under 1939 Internal Revenue Code, § 117(a) (2) and (b), as determined by the Tax Court.

It was possible for the taxpayer to sell either his option or the land covered by the option. In order to sell the land and deliver title thereto, it would be necessary for the taxpayer to exercise his option. The problem here is to determine what the taxpayer sold.

The facts are largely stipulated. Some testimony was received. The Tax Court in its memorandum opinion (T.C.Memo 1960–92, filed May 9, 1960, not officially reported) sets out the evidence very fully, including all pertinent, written documents. Taxpayer on April 25, 1949, obtained from the Denisons a 90-day option to purchase 2,600 acres of described real estate for $85,800, less $35 per acre for any land as to which marketable title could not be delivered. The Denison heirs, except Lucille D. Jones, were represented by J. Reed Denison who held appropriate power of attorney. The option provides for notice of its exercise to J. Reed Denison and provides for the manner of payment of the purchase price, and further states that upon exercise of the option and payment of the price, Denisons would convey the land by warranty deed to the optionee or any party designated by him. The option was kept in force by a series of renewals, the last of which extended the option to October 10, 1950. The validity of the option is not questioned.

Taxpayer originally hoped to acquire the property under option for a company in which he was interested or for himself but apparently the necessary arrangements for the purchase price could not be met. Thereafter he opened negotiations with Westmoreland, culminating in entering into an agreement with Westmoreland on October 10, 1950, such agreement reading as follows:

"Herman Miller, hereinafter termed 'Seller', and Westmoreland Steel Corporation, hereinafter termed

'Buyer', for value received each from the other, hereby mutually agree:

"Seller shall cause to be conveyed to Buyer by warranty deed a good and marketable title to the twenty-five hundred acres of land listed and described on the attached 'List of Lands', each page of which is identified by the signatures of the parties hereto for the sum and price of One Hundred and Fifty Dollars ($150.-00) per acre, of which purchase price the Buyer now pays over to the First National Bank of Batesville, Arkansas, as Escrow Agent hereunder, the sum of One Hundred Thousand Dollars ($100,000.00), and now pays to the Seller the sum of One Thousand Dollars ($1,000.00) cash to be applied toward cost of procuring abstracts of title to said lands and expense of any curative work found to be necessary to perfect titles. Said whole sum now placed in escrow and paid to Seller shall be treated as part of the purchase price of said lands.

"Seller shall have prepared abstract of title to said lands and thereafter immediately submit same to Buyer's attorney for examination so that title examination may be completed by December 30, 1950. Within fifteen (15) days after any abstract of title is delivered to Buyer's attorney said attorney shall furnish Seller's attorney a copy of his title option setting forth any requirement he may make to show title to be good and marketable.

"A warranty deed conveying a good and marketable title to said lands to the Buyer shall be before December 30, 1950, deposited with said Escrow Agent to be delivered to the Buyer upon full payment of the purchase price. If title is found to be good and marketable, the Buyer shall deposit the balance of the purchase price with the Escrow Agent at any time on or before December 30, 1950.

"In the event title to any portion of said land is not good and marketable, the purchase price above provided for shall be reduced $150.00 per acre for any of said land having defective title and not conveyed to the Buyer.

"In the event good and marketable title is not shown to as much as two thousand (2000) acres of said land, then the Buyer may, at its option, decline to purchase any portion of said land and shall by said Escrow Agent be refunded the $100,000.00 escrow fund above mentioned.

"The Seller shall deliver possession of said lands to the Buyer on the 31st day of October, 1950.

"The Seller now hereby sells, transfers and assigns to the Buyer a certain option covering the lands herein referred to as 'List of Lands', executed by J. Reed Denison et al to the Seller dated April 25, 1949, the profits accruing to the Seller by the sale of said option being the moving consideration hereunder."

Shortly thereafter a separate escrow agreement was signed by taxpayer, Westmoreland and the escrow bank which provided for the deposit in escrow of the $375,000 sale price and for its payment to taxpayer upon approval of title and delivery of deeds.

Taxpayer in his brief states that he accepts findings of fact made by the Tax Court except the ultimate findings that taxpayer exercised the option; that he contracted to sell the real estate and that the gain was realized from the sale of real estate, not from the sale of the option. Taxpayer in effect contends that the Tax Court failed to draw proper inferences from established facts.

Taxpayer in his brief asserts he is entitled to a reversal for the following reasons:

1. There is no evidence to support a finding that taxpayer exercised his purchase option or acquired an interest in the real estate underlying the option.

2. Taxpayer sold the option, not the land covered by the option, as a matter of law.

3. Substance of transaction is controlling for tax purposes, even if taxes are reduced.

4. Prior cases attribute sale of land to optionee only if he acquired interest in real estate and contracted to sell it, in fact and substance.

5. Under applicable law, taxpayer is entitled to report his profit as a long-term capital gain.[1]

The separate points made by the taxpayer are closely related and, jointly, essentially raise the issue of whether the Tax Court's determination that the taxpayer sold the land rather than the option is clearly erroneous—that is, whether the Tax Court's determination lacks substantial evidentiary support or is induced by an erroneous view of the law.

■ Fact findings of the Tax Court under 1954 Internal Revenue Code § 7482(a), 26 U.S.C.A. § 7482(a), are to be given the same weight as findings of a district court in a case tried without a jury. The Tax Court's findings of fact must stand unless clearly erroneous. This rule also applies to factual inferences from undisputed basic facts. Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 291, 80 S.Ct. 1190, 4 L.Ed.2d 1218.

In the case just cited, which presented the question of whether certain transactions constituted a gift, the court states:

"Decision of the issue presented in these cases must be based ultimately on the application of the fact-finding tribunal's experience with the mainsprings of human conduct to the totality of the facts of each case. The nontechnical nature of the statutory standard, the close relationship of it to the data of practical human experience, and the multiplicity of

relevant factual elements, with their various combinations, creating the necessity of ascribing the proper force to each, confirm us in our conclusion that primary weight in this area must be given to the conclusions of the trier of fact." 363 U.S. 289, 80 S.Ct. 1198.

In Crown Iron Works Co. v. Commissioner, 8 Cir., 245 F.2d 357, 360, this court stated:

"The question of intent, if at all doubtful either because of a conflict in the evidence or because different inferences reasonably may be drawn from undisputed facts, is a question of fact for the trial court, and only becomes a question of law for a reviewing court if the evidence is all one way or so overwhelmingly one way as to leave no doubt as to the fact."

■ Taxpayer challenges the finding by the Tax Court that he exercised the option. He concedes in his brief that if he exercised the option, "he must have sold an interest in land." The issue of whether taxpayer exercised the option is one of fact. We are satisfied that substantial evidentiary support appears for the court's determination that the taxpayer exercised the option. Some of the circumstances surrounding the transaction are reflected by statements in the taxpayer's brief, as follows:

"It should also be noted that on the very day when appellant agreed to assign his option to Westmoreland, October 10, 1950, the option was to expire. Therefore, appellant could not just assign his option to Westmoreland and nothing more. He had to make sure that Westmoreland was prepared to exercise the option at once; and to accomplish that, it was necessary that he overcome any possible doubts in the minds of Westmoreland's principals, for at that point one day of delay

---

1. Taxpayer also raises a subordinate issue to the effect that if it is determined he sold the option, $16,521.96 was erroneously included in his 1951 income. Taxpayer concedes that this issue need not be separately determined by this court.

or indecision by Westmoreland could mean the end of appellant's profit."

"It is not difficult to guess that appellant was probably very anxious that Westmoreland have no contacts with the Denisons before he had their signature on the October 10th Agreement, since they were agreeing to pay $150 an acre for property of the Denisons which the appellant had under option at $35 an acre."

A fair inference from the foregoing and the facts as a whole is that the taxpayer was protecting his option rights in order to gain the $264,625 profit available on this transaction. Taxpayer's option rights expired on October 10, 1950, the date of his agreement with Westmoreland. There is no evidence whatever to show that Westmoreland exercised the option or made any effort to do so. Thus the court's finding that Westmoreland did nothing to exercise the option is fully supported by the evidence.

■ It is clear that McCaleb was acting as attorney for the taxpayer in the transactions pertinent here, and that he advised Murphy, attorney for the Denisons, that Westmoreland was taking the optioned land. The option contained no requirement for any particular type of notice of its exercise. Unless the option or a statute specifies the manner of its exercise, it may be exercised orally. See 91 C.J.S. Vendor & Purchaser § 10b, pp. 855–856.

We also observe that J. Reed Denison, the party to whom the option required the notice to be given, was deceased at the time of the exercise of the option. There is evidence to the effect that Murphy was acting as attorney for the J. Reed Denison estate and was representing the estate and most of the Denisons in these transactions. Highsmith was Westmoreland's legal representative. Since the Denisons have completely fulfilled the obligations they assumed in the option agreement, taxpayer's need for establishing the timely exercise of the option no longer exists.

We do not believe that the fact that McCaleb at one time represented some of the Denisons is of any controlling force or compels any inference that McCaleb, in giving the notice to Murphy, was acting for some of the Denison heirs. The evidence satisfactorily shows Murphy was representing all or substantially all of the Denison heirs. We believe that the court was justified in finding that McCaleb gave the notice in his capacity as attorney for the taxpayer.

It is hard to believe that the Denisons would have completed the sale of the optioned lands for $35 an acre when taxpayer was receiving $150 per acre for the same land, unless they were convinced that the option had been timely exercised and that they were bound thereby.

The Tax Court's determination that taxpayer exercised the option has not been shown to be clearly erroneous.

■ Taxpayer makes some contention that the sale agreement heretofore set out with Westmoreland should be construed as a matter of law as a sale of his option only. As heretofore pointed out, taxpayer conceded that he sold an interest in land in the event that he exercised his option. We have upheld the Tax Court's conclusion that the taxpayer exercised the option. Under such circumstances, it would seem that the form of the agreement is of no great significance. In any event, we believe that the agreement when considered as a whole appears to deal principally with the sale of the real estate. The purchase price is the full purchase price of the land, not the value of the option. The full consideration is to be deposited in escrow and to be paid, upon compliance, to the taxpayer, not to the Denisons. Provision is made for the delivery of warranty deed and merchantable title. The fact that the deed ran directly from the Denisons to Westmoreland is of no significance as the option provided for a deed to the nominee of the optionee.

■ It is true that provision is made in the last paragraph of the agreement

for the transfer of the option. Such provision for the transfer of the option as a portion of the sale transaction does not conclusively establish that under the agreement as a whole the principal subject matter is the sale of the option, rather than the sale of the land. If the agreement does not clearly provide for the sale of the land, it is at least ambiguous as to subject matter, and when the agreement is construed in the light of the surrounding circumstances as disclosed by the evidence, a conclusion that the agreement pertains to a sale of the land is fully warranted.

Support is found for the Tax Court's decision in Blick v. Commissioner, 3 Cir., 271 F.2d 928; Barber v. United States, 8 Cir., 215 F.2d 663; H. G. Butler, 43 B.T.A. 1005.

Points 3 and 4 raised by the taxpayer, to the effect that the substance of the transaction controls over the form and that the substance of the transaction is a sale of the option, are completely answered by the Barber case where, in answering a similar contention, we stated:

> "It also has been argued in effect that the situation here was, in all its practical aspects and results, equivalent to an assignment by the taxpayers of their option right and that it should therefore realistically be so regarded. But the fruits of business transactions are not required to be viewed for tax purposes on the basis of practical aspects or results alone, if they involve the creation or the use of legal realities, in both form and substance, on which a different and greater tax liability can exist. The taxing authorities have the general right to assess income taxes on the basis of the sound legal and equitable realities which have existed in the taxpayer's situation. They may also at times, of course, pierce the mere form of apparent legal reality and examine the practical or economic actualities of what the taxpayer has done, where these outweigh the substance of the legal reality. But the choice of the tax course to be applied in any such situation, where there may be a right to a choice, is the Government's, not the taxpayer's." 215 F.2d 667.

A careful examination of all of the errors asserted by the taxpayer in the light of the record before us convinces us that the Tax Court committed no error in determining that the taxpayer sold the land, not the option, and that the profit he derived therefrom is subject to short-term gain treatment, and that the Tax Court committed no error in making the deficiency determinations here made.

The decision of the Tax Court is affirmed.