T.C. Memo. 2001-286

UNITED STATES TAX COURT

CARROLL R. FURNISH, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9490-99.                    Filed October 29, 2001.

Carroll R. Furnish, pro se.

Leonard T. Provenzale, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, Judge:  Respondent determined the following
deficiencies in, addition to, and penalties on petitioner's
Federal income taxes:

|       |            | Addition to Tax | Penalty   |
| Year  | Deficiency | Sec. 6651(a)(1) | Sec. 6662 |
|-------|------------|-----------------|-----------|
| 1993  | $67,215    | $16,803.75      | $13,443.00 |
| 1994  | 64,073     | -0-             | 12,814.60 |
| 1995  | 42,196     | -0-             | 8,439.20  |

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

The issues for decision are:[1] (1) Whether petitioner is entitled to deduct Schedule C, Profit or Loss From Business, expenses in excess of the amounts allowed by respondent, (2) whether petitioner is liable for an addition to tax pursuant to section 6651(a)(1) for 1993, and (3) whether petitioner is liable for penalties pursuant to section 6662(a) for 1993, 1994, and 1995.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time he filed his petition, Carroll R. Furnish resided in West Palm Beach, Florida. Mr. Furnish built the house that he lived in with his two minor children with "his own hands". During the years in issue, he owed 2 years of property taxes on his home, and he "maxed out" all his credit cards.

Prior to and during the years in issue, Mr. Furnish was in

---

[1] Adjustments respondent made to petitioner's earned income credit, deduction for personal exemptions, and self-employment tax are computational in nature and will be resolved by our holdings herein.

the construction business.  Specifically, he was a roofer who did shell work, beam work, and put on trusses, sheeting, and plywood. Prior to 1993, he worked alone.  In 1993, he hired carpenters and laborers to help him construct the roofs.  He constructed roofs for new residential construction projects, and usually worked on one or two houses at a time.

During the years in issue, Mr. Furnish would put together crews to help him construct the roofs.  He usually had at least seven men on the job.[2]  A crew of seven consisted of six carpenters and one laborer.  He paid the carpenters $15 per hour and the laborer $7 per hour.  Most of the people working in Mr. Furnish's crews did not speak English.  He had one man who understood English and translated to the other men.

During the years in issue, he and his crew would normally work 8 hours a day and 5 days a week.  Occasionally, however, they would also work on weekends.  Mr. Furnish and his crew worked regardless of the weather.  They worked through the rain, and when there was lightning they waited until it stopped.

In 1993, because there was no work in West Palm Beach, Florida, Mr. Furnish drove his truck 50 miles each way to Coral Springs, Florida.  During the years in issue, Mr. Furnish

---

[2]  Mr. Furnish needed seven people to set up the trusses: one to hook them up, one on each side of the wall, one to catch the middle, two to set the trusses along the beam, and one to strip them.

replaced the engine in the truck he used in his business.  He also repaired the transmission and brakes, replaced the tires, and changed the oil in the truck at least once a month.

Mr. Furnish maintained a separate room in his house as his office.  He bought a computer for use in his business.  During the years in issue, Mr. Furnish purchased liability and compensation insurance for his business.

In 1993, Mr. Furnish hired an accountant, Richard Buckner.  Mr. Buckner advised Mr. Furnish on what he needed to do for tax purposes.  During the years in issue, Mr. Furnish gave all his records to Mr. Buckner, and Mr. Buckner prepared Mr. Furnish's Federal income tax returns for 1993, 1994, and 1995.  Mr. Furnish also gave Forms 1099 to his crew based on the information given to him by each of them.  He also filed copies of the Forms 1099 with the Internal Revenue Service (IRS).

Mr. Furnish filed his Federal income tax returns for 1993, 1994, and 1995 on August 23, 1995, April 15, 1995, and April 15, 1996, respectively.  Mr. Furnish reported the following expenses on his Schedules C:[3]

---

[3]  For convenience, some figures have been rounded to the nearest dollar.

| Expenses | 1993 | 1994 | 1995 |
|----------|------|------|------|
| Car and truck | $2,774 | $1,776 | $2,776 |
| Forms 1099[4] | 178,340 | 148,900 | 105,910 |
| Depreciation | 3,637 | -0- | 3,109 |
| Insurance | 4,125 | 4,125 | 4,775 |
| Legal | 670 | 510 | 820 |
| Office expenses | 472 | 378 | 4,258 |
| Repairs | 668 | 569 | 2,569 |
| Supplies | 12,944 | 23,918 | 21,458 |
| Taxes and licenses | 512 | 312 | 518 |
| Utilities | 1,198 | 998 | 2,797 |

In 1996, the IRS examined Mr. Furnish's tax returns. Sometime before the audit, Mr. Buckner became seriously ill and was hospitalized. The doctors told Mr. Buckner's wife that Mr. Buckner was dying and that he would not last another week. At this time, without Mr. Furnish's knowledge or consent, Mr. Buckner's wife threw out all of Mr. Buckner's client records, including Mr. Furnish's records. During the time the examination was being conducted, Mr. Buckner died.

After he learned that his records had been destroyed, Mr. Furnish went to suppliers to try to obtain records of what he paid them. With few exceptions, no records existed other than the ones that he had given to Mr. Buckner (which were destroyed).

Mr. Furnish sold his car and hired an attorney to represent him during the IRS examination. After a short period of time,

---

[4] These figures represented amounts Mr. Furnish paid to carpenters and laborers he hired to help him with his construction work.

however, he did not have enough money to pay for the attorney's services.

Respondent disallowed all of the expenses listed on the Schedules C for 1993, 1994 and 1995 except for the following: (1) Car and truck expenses of $2,025 for 1995; (2) insurance expenses of $4,125 (the full amount claimed) for 1994; (3) legal expenses of $100 for 1993, 1994, and 1995; (4) office expenses of $378 (the full amount claimed) in 1994; (5) supplies expenses of $23,918 (the full amount claimed) for 1994 and $18,018 for 1995; (6) utilities expenses of $998 (the full amount claimed) for 1994; and (7) all the taxes and licensing expenses claimed by Mr. Furnish for 1993, 1994, and 1995.  Additionally, although Mr. Furnish deducted only $148,900 for labor expenses in 1994, respondent disallowed $181,055 of labor expenses.

OPINION

As we observed in Diaz v. Commissioner, 58 T.C. 560, 564 (1972):

> This case epitomizes the ultimate task of a trier of the facts--the distillation of truth from falsehood which is the daily grist of judicial life.  He must be careful to avoid making the courtroom a haven for the skillful liar or a quagmire in which the honest litigant is swallowed up.  Truth itself is never in doubt, but it often has an elusive quality which makes the search for it fraught with difficulty.  That this is so is clearly illustrated by the situation herein.
> * * *

I.    Business Expense Deductions

The main issue to be decided in the instant case is whether

petitioner has substantiated certain Schedule C business expense deductions that he claimed on his 1993, 1994, and 1995 Federal income tax returns.  Deductions are a matter of legislative grace, and petitioner bears the burden of proving that he is entitled to the deductions claimed.  Rule 142(a); <u>New Colonial Ice Co. v. Helvering</u>, 292 U.S. 435, 440 (1934).[5]

Ordinarily, a taxpayer is permitted to deduct the ordinary and necessary expenses that he pays or incurs during the taxable year in carrying on a trade or business.  Sec. 162(a).  A taxpayer, however, is required to maintain records sufficient to establish the amounts of his deductions.  Sec. 6001; sec. 1.6001-1(a), Income Tax Regs.

When a taxpayer establishes that he paid or incurred a deductible expense but does not establish the amount of the deduction, we may estimate the amount allowable in certain circumstances.  <u>Cohan v. Commissioner</u>, 39 F.2d 540, 543-544 (2d Cir. 1930); <u>Vanicek v. Commissioner</u>, 85 T.C. 731, 742-743 (1985).  There must be sufficient evidence in the record, however, to permit us to conclude that a deductible expense was paid or incurred in at least the amount allowed.  <u>Williams v. United States</u>, 245 F.2d 559, 560 (5th Cir. 1957).

---

[5]  The examination in this case began in 1996; therefore, sec. 7491 is inapplicable.  <u>Higbee v. Commissioner</u>, 116 T.C. 438, 440 (2001) (sec. 7491 applies to examinations commenced after July 22, 1998).

A.    Preliminary Matters

Before addressing the merits of each claimed deduction, the Court notes that respondent does not dispute that petitioner's records were destroyed by petitioner's accountant's wife and does not contend that the destroyed records were inadequate or insufficient.  Additionally, the record establishes that petitioner fully cooperated with the IRS from the audit level through the trial stage.  Furthermore, having observed petitioner's appearance and demeanor at trial, we find him to be honest, forthright, and credible.

B.    Labor Expense

As an initial matter, we note that respondent disallowed $32,155 of labor expenses for 1994 in excess of the amount petitioner claimed on his return.  Respondent never explained this disparity.  To this extent, respondent's determination is not sustained.

Petitioner testified that he and his crew worked every week during the years in issue.  Although we found petitioner to be a credible witness, we think it is likely that there were some weekdays during the years in issue that he did not work.  We note, however, that we found as a fact that occasionally he and his crew worked weekends.  On the basis of the record, we approximate that petitioner and his crew worked 40 hours a week, 50 weeks a year.  On the basis of this finding, we conclude that

he was entitled to deduct the full amount of the labor costs he claimed on his returns for each of the years in issue.[6]

C.    Depreciation Expenses

At trial, petitioner provided no evidence regarding the depreciation deductions.  It is unclear from the record what property petitioner depreciated in 1993 and 1995.  Accordingly, there is no rational basis to approximate these expenses, and we sustain respondent's determination as to the depreciation deductions.

D.    Legal Expenses

Respondent allowed $100 of legal expenses each year. Petitioner testified that he paid $100 of legal expenses. Therefore, we sustain respondent's determination as to the legal expenses.

E.    Insurance, Office, Repairs, Supplies, and Utility Expenses

The parties agree that petitioner's records were destroyed due to circumstances beyond his control.  Petitioner credibly testified as to his insurance, office, repairs, supplies, and utility expenses during the years in issue.  Under the circumstances, petitioner's uncontradicted testimony warrants

---

[6]  Our finding would entitle petitioner to a $194,000 deduction per year (one laborer being paid $7 per hour, working 40 hours a week, for 50 weeks equals $14,000 per year, and six carpenters paid $15 per hour, working 40 hours a week, for 50 weeks equals $180,000 per year).  Petitioner claimed less than this amount each of the years in issue.

allowance of the entire amounts claimed for these expenses in his tax returns.  See <u>Miller v. Commissioner</u>, T.C. Memo. 1960-92, affd. 295 F.2d 538 (8th Cir. 1961).  Accordingly, we estimate that the amounts allowed are the amounts claimed by petitioner for these expenses on his tax returns for the years in issue. See <u>Huff v. Commissioner</u>, T.C. Memo. 1994-451.

F.   <u>Car and Truck Expenses</u>

In addition to satisfying the criteria for deductibility under section 162, certain categories of expenses must also satisfy the strict substantiation requirements of section 274(d) in order for a deduction to be allowed.  The expenses to which section 274(d) applies include, among other things, automobile expenses.  Secs. 274(d)(4), 280F(d)(4)(a)(i) and (ii).  We may not use the <u>Cohan</u> doctrine to estimate expenses covered by section 274(d).  See <u>Sanford v. Commissioner</u>, 50 T.C. 823, 827 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).

To substantiate a deduction attributable to listed property (i.e., automobile expenses), a taxpayer must maintain adequate records or present corroborative evidence to show the following: (1) The amount of the expense; (2) the time and place of use of the listed property; and (3) the business purpose of the use.

Sec. 1.274-5T(b)(6), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

When a taxpayer's records have been destroyed or lost due to circumstances beyond his control, he is generally allowed to substantiate his deductions through secondary evidence. Malinowski v. Commissioner, 71 T.C. 1120, 1125 (1979); sec. 1.274-5T(c)(5), Temporary Income Tax Regs., 50 Fed. Reg. 46022 (Nov. 6, 1985). A taxpayer in this type of situation may reconstruct his expenses through other credible evidence. Watson v. Commissioner, T.C. Memo. 1988-29; sec. 1.274-5T(c)(5), Temporary Income Tax Regs., supra. If no other documentation is available, we may, although we are not required to do so, accept credible testimony of a taxpayer to substantiate a deduction. Watson v. Commissioner, supra.

Petitioner credibly testified as to the nature of the expenses he incurred in the operation of his truck. We accept petitioner's credible testimony as substantiation of his car and truck expenses. Under the circumstances, petitioner's uncontradicted testimony warrants allowance of the entire amounts claimed for these expenses on his tax returns. See Miller v. Commissioner, supra. Accordingly, we do not sustain respondent's determination disallowing these expenses.

II. Section 6651(a)(1)

Respondent determined that petitioner is liable for an

addition to tax pursuant to section 6651(a)(1) for 1993. Section 6651(a)(1) imposes an addition to tax for failure to file a return on the date prescribed (determined with regard to any extension of time for filing), unless the taxpayer can establish that such failure is due to reasonable cause and not due to willful neglect. The taxpayer has the burden of proving the addition is improper. See Rule 142(a); United States v. Boyle, 469 U.S. 241, 245 (1985).

Petitioner stipulated that he did not file his tax return for 1993 until August 23, 1995. He offered no evidence showing that his failure to file was due to reasonable cause and not due to willful neglect. Accordingly, we hold that petitioner is liable for the addition to tax pursuant to section 6651(a)(1).

III. Section 6662(a)

Pursuant to section 6662(a), a taxpayer may be liable for a penalty of 20 percent on the portion of an underpayment of tax (1) attributable to a substantial understatement of tax or (2) due to negligence or disregard of rules or regulations. Sec. 6662(b). Whether applied because of a substantial understatement of tax or negligence or disregard of the rules or regulations, the accuracy-related penalty is not imposed with respect to any portion of the understatement as to which the taxpayer acted with reasonable cause and in good faith. Sec. 6664(c)(1). The decision as to whether the taxpayer acted with reasonable cause

and in good faith depends upon all the pertinent facts and circumstances.  Sec. 1.6664-4(b)(1), Income Tax Regs.  Relevant factors include the taxpayer's efforts to assess his proper tax liability, including the taxpayer's reasonable and good faith reliance on the advice of a professional such as an accountant.  See id.  Further, an honest misunderstanding of fact or law that is reasonable in light of the experience, knowledge, and education of the taxpayer may indicate reasonable cause and good faith.  See Remy v. Commissioner, T.C. Memo. 1997-72.

It is clear from the record that petitioner is an unsophisticated taxpayer who relied reasonably and in good faith on his accountant.  Consequently, we conclude that for the years in issue petitioner had reasonable cause and acted in good faith as to any underpayment resulting from the deductions in issue.  Accordingly, we hold that petitioner is not liable for the penalty pursuant to section 6662(a).

To reflect the foregoing,

Decision will be entered

under Rule 155.