CHARLES H. JEFFRIES, administrator, et al., appellants,

*v.*

SELINA A. CHARLTON et al., respondents.

[Argued March 4th, 1908. Decided June 15th, 1908.]

An agreement, called an option, whereby C., the owner of certain lands which were under foreclosure, agreed with J., a fourth mortgagee of said lands, to convey her equity to J., J. to purchase the lands at foreclosure sale and to reconvey them to C. within two years at an advance of $2,000, J. to rent the lands within said period and apply the rents to the fixed charges, interest on the cost to him of the premises, and also to the interest on the $2.000 agreed to be paid.—*Held*, to be an agreement to reconvey, of which time was not of the essence, and C.'s failure to comply within two years not to bar her from relief by the way of specific performance.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Leaming, whose opinion is reported in *72 N. J. Eq. (2 Buch.) 340.*

*Mr. Harry W. Lewis, Mr. Enoch A. Higbee* and *Mr. Harry R. Coulomb,* for the appellants.

*Messrs. Bourgeois & Sooy,* for the respondents.

The opinion of the court was delivered by

VOORHEES, J.

On the 2d day of July, 1903, one Jacobson held the legal title to the Hotel Marsden in Atlantic City, the beneficial ownership whereof was in Selina A. Charlton. There were four mortgages upon the property, one held by the Penn Mutual Life Insurance Company for $10,000 and then under foreclosure, the sale under which was advertised to take place within six days; one held by

John Young for $6,000; a third by Oliver Guttridge for $4,000; a fourth by Lewis E. Jeffries for $1,500; aggregating $21,500.

On the 2d day of July a written agreement was made between Lewis E. Jeffries and Selina A. Charlton, which recited the above mortgages and the pending foreclosure of the Penn Mutual Life Insurance Company mortgage, and that "the parties hereto are desirous of protecting their respective interests in the premises." The agreement then provided that Jeffries should acquire the Young and Guttridge mortgages by assignment and allow the premises to be sold under the Penn Mutual mortgage and at such sale purchase the premises in his own name at a sum not to exceed $35,000; that if the premises produced at said sale more than $35,000, then the excess of the purchase price over the amount required to satisfy the mortgages should be paid to Mrs. Charlton. It was also agreed that if Jeffries purchased at the sale he would mortgage the premises for $10,000 and convey them subject to such mortgage to Jacobson at any time after the purchase and within two years from the date of the agreement for the sum of $24,000, in which event Jacobson was to assume the payment of the $10,000 mortgage to be placed on the property, to pay Jeffries $2,000 in cash and execute a second mortgage for $12,000 on the premises. The agreement also provided that Jeffries should rent the premises and from the rents pay the fixed charges against the premises—interest, taxes, insurance, &c.—as well as all repairs required, retain for himself six per cent. interest on the sum of $14,000, and pay over the balance of the rentals to Mrs. Charlton, retaining also any sheriff's costs in excess of $40, and taxes in excess of $1,000,

"it being expressly understood and agreed by and between the parties that the party of the first part (Jeffries) shall at all times during the continuance of this option retain and receive for his own use and benefit six per cent. interest on a sum of money equivalent thereto on the amount of money or balance thereof due to him under this option, and in the event of said premises renting for a sum less than shall be sufficient for the payment of all expenses and repairs against said premises, as aforesaid, and the interest aforesaid, the party of the second part (Charlton) will pay to the party of the first part the deficiency arising from said rentals. and in the event of such deficiency arising as aforesaid. the party of the second part paying to the party of the first part such de-

ficiency on or before the first of October of the then current year, this option shall continue in force and effect, otherwise to become null and void."

At the foreclosure sale Jeffries purchased the property and went into possession of the premises, rented the same and collected the rents. Mrs. Charlton having failed to carry out the agreement within two years, the bill in this case was filed by the executor and widow and heirs-at-law of Mr. Jeffries, he having died June 12th, 1905, praying that Mrs. Charlton and Jacobson be absolutely debarred and foreclosed of all rights in and equity to the property, and that the aforesaid agreement be delivered up to the complainants.

Charlton and Jacobson answered, setting up that pursuant to the agreement Jeffries had purchased the premises at foreclosure sale subject to the rights of Mrs. Charlton under the agreement. They also filed a cross-bill alleging that Jeffries had entered into the possession of the premises and had received the rents, that no account of the rents and disbursements had been rendered by Jeffries. Mrs. Charlton tendered herself ready upon a proper accounting to pay such sums of money as might be due and prayed that upon payment by her of such sum the complainants might be decreed to specifically perform the agreement and convey the lands to Mrs. Charlton. The answer to this cross-bill denied that Jeffries did not account, averring that the accounting showed an indebtedness to him of upwards of $1,700, and that Mrs. Charlton had abandoned her rights in the premises.

By a stipulation signed by the parties it appears that an attorney in the latter part of May, 1905, at the request of Mrs. Charlton and with full power to act for her, visited Mr. Jeffries at his home in Baltimore, where he was then lying ill, and stated to him that he was present to make settlement for the Marsden property and pay the amount of $2,000 due under the agreement, whereupon Mr. Jeffries replied that he would not accept $2,000, that Mrs. Charlton owed him much more, and after some figuring, in which Mrs. Jeffries assisted, he further stated that the amount due to him was $3,552.72, and that he would convey to Mrs. Charlton when she paid him that amount.

Mr. Jeffries died June 12th, 1905. His will was proved June 24th. After his death, and about three days before the so-called option in the agreement expired, the same attorney called on the executor and stated that he was ready to pay the $2,000 mentioned in the agreement. The executor declined to accept it, stating that there was more than that amount due, and subsequently, on July 10th, filed the bill in this cause.

The vice-chancellor held the agreement to be a strict option and not to have in it the equity of the right to redeem after the period of two years had expired. The settled rule in this state is that in equity time is not of the essence of an agreement to convey lands, unless there is an express stipulation by the parties making it so, or a necessary implication arises from the nature of the transaction that the parties so intended. *Bullock* v. *Adams' Executor, 20 N. J. Eq. (5 C. E. Gr.) 367; King* v. *Ruckman, 21 N. J. Eq. (6 C. E. Gr.) 599; Dynan* v. *McCulloch, 46 N. J. Eq. (1 Dick.) 11; affirmed, 46 N. J. Eq. (1 Dick.) 608.*

No express agreement to that effect appears in this instrument. Does such result flow from a necessary implication? While in the body of the instrument it is called an option, yet it seems clear that it is really an agreement to reconvey. It is evident, not only from its recitals but from the object disclosed by its terms, that its real purpose and intended effect was for the benefit of the defendant, and to hold that a strict construction should be given to the time limit would be contrary to all else in the relation of the parties. This is also clear when we consider that during the period of two years Mrs. Charlton became entitled to the surplus of the rents over such sum as was required to keep down the interest, taxes, insurance and pay for the improvements, and that it was Jeffries's duty to collect the rents and apply them to the above purposes, Mrs. Charlton being bound to make good to Jeffries any deficiency. Thus the property was treated as if Mrs. Charlton was the owner. The management was wholly left with Mr. Jeffries for his protection and for which he was to be paid $2,000 and interest. There is nothing in these arrangements to indicate that failure to carry out the agreement within the strict time would not be satisfied

28

by the equitable rule allowing interest as compensation for the delay.

The provision for the settlement of accounts in October of each year would place Mr. Jeffries under the duty of rendering a statement showing on which side of the account the balance lay. As he was possessed of the only knowledge upon the subject he alone could do this. It does not appear that any account was rendered by him until it was figured up when the attorney applied to him during his illness in the latter part of May, 1905, when he claimed that the amount due was $3,552.72. Thus, Mr. Jeffries having failed to advise Mrs. Charlton of the amount due to him at the times specified in the agreement for the settlements, and to call upon her for payment, a presumption arose that the rents were ample to meet the expenses. The one and only accounting came about at the instance of Mrs. Charlton when she tendered herself ready to perform the agreement by the payment of $2,000 shortly before Mr. Jeffries's death. Then, for the first time, the deficiency of the rents was made known to her. The dispute over this amount, the death of Mr. Jeffries following shortly thereafter, both within the two-year limit, the fact that his will was not proved until eight days before the expiration of the two years, within which time the executor also had refused to accept the sum of $2,000, all present reasonable ground for relief against the forfeiture claimed by the complainants to have resulted from the delay. Nor has there been any change in the relation of the parties or in their condition consequent upon the failure to perform within strict time, whereby an estoppel would arise.

There is nothing in this contract to indicate that time was deemed by the parties to be of its essence or that it has become such, and therefore Mrs. Charlton's failure to comply within two years does not bar her from relief by way of specific performance.

The decree should be reversed, with costs, and a decree entered directing the complainants to render an account and to specifically perform said agreement by a conveyance of the property to the defendants upon the said defendants complying with the terms of the agreement within a reasonable time.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF-JUSTICE, GARRISON, SWAYZE, REED, PARKER, BERGEN, VOORHEES, MINTURN, BO-GERT, VREDENBURGH, VROOM, GREEN, GRAY, DILL—15.