The question is whether complainant or defendant Miss Mildred L. Martindell is entitled to a dividend of $100 a share on 27 shares of stock of Fiduciary Counsel, Inc., declared December 30th, 1940. The parties had entered into *Page 524 
an agreement dated October 25th, 1939, which recited their desire that the defendant should have an option to purchase the stock from the complainant:
"Now therefore, the seller [complainant] agrees to sell and transfer said 27 shares of stock of Fiduciary Counsel, Inc., to the buyer [defendant] for the price and sum of $5,000 at any time within five years from the date of this agreement."
On December 27th, 1940, defendant wrote complainant as follows:
"I hereby exercise the option referred to in agreement between us dated October 25, 1939, and accordingly do hereby demand that you transfer, sell and deliver to me twenty-seven (27) shares of stock of Fiduciary Counsel, Inc. I have deposited the purchase price of Five Thousand Dollars ($5,000) with the Colorado National Bank of Denver, Colorado, to which bank I have given instructions to pay over said sum of Five Thousand Dollars ($5,000) to you or your order against delivery of said shares of stock of Fiduciary Counsel, Inc., duly endorsed and stamped for transfer.
"If you do not accept such procedure for the delivery of said shares and payment of the purchase price, I hereby demand that you designate the time and place for same and I will make payment pursuant to your notice to that effect."
The letter was received by complainant on December 29th, and the next day the directors of Fiduciary Counsel, Inc., declared the dividend. On January 3d, complainant acknowledged receipt of defendant's letter. She was unwilling to conclude the transaction in the manner suggested by defendant, but stated that she would be ready to deliver the stock against legal tender in the amount of $5,000 at a certain hour and place in New Jersey. The stock was transferred and the consideration paid early in February.
The option agreement of October 25th, 1939, of course, did not by itself make defendant the owner of the stock or entitle her to dividends. An option is only a continuing offer; it cannot become an agreement without being accepted. In order to make a contract, the acceptance must, in every respect, meet and correspond with the offer, neither falling within nor going beyond the terms proposed. Potts v. Whitehead, 23 N.J. Eq. 512. Defendant's letter of acceptance *Page 525 
stated matters beyond the terms of the offer, namely, that she had deposited the purchase price with a certain bank under instructions to pay complainant upon delivery of the stock. But the acceptance was absolute; it was not conditioned upon complainant's agreeing to the proposed method of payment. Defendant was merely looking forward beyond the making of the contract to the fulfillment of the contract; that is, the payment of the consideration and the delivery of the stock. There was a good acceptance unless, as complainant contends, acceptance had to be accompanied by payment or tender of the purchase price.
When a person makes an offer, he can couch it in such terms that it may be accepted by a promise, express or implied, so that a bilateral contract arises, executory on both sides. Or he may so frame his offer that it can be accepted only by an act, so that a unilateral contract is formed, executory on the part of the offerer alone. We have examples of both kinds in our reports. In Houghwout v. Boisaubin, 18 N.J. Eq. 315, there was an offer in these words, "Mr. Boisaubin also agrees to sell to Mr. Houghwout the plot of land of about 22 acres called the Spencer Woods, for the sum of $2,200 per acre, and Mr. Houghwout has until the first day of March, 1864, to accept of the proposition." Amzi Dodd, Esq., sitting as master, held that the offer could be accepted in writing or by words without tender or payment of the price and that after acceptance, each party had a reasonable time in which to perform. In Jeffries v. Charlton,72 N.J. Eq. 340 (reversed on another point, 74 N.J. Eq. 430), where the terms of the option are not stated, Vice-Chancellor Leaming held that actual payment or tender was necessary in order to meet the terms of the offer. Illustrations from other jurisdictions are World Tire Corp. v. Gibson Corp. (Ind.),135 N.E. Rep. 805; Crancer v. Lareau, 1 Fed. Rep. 2d117; Del. Sales, c., Co. v. Haydock (Del.),113 Atl. Rep. 299; Pennsylvania Mining Co. v. Martin (Pa.),59 Atl. Rep. 436; Atlas Portland v. American, c., Co. (Pa.),124 Atl. Rep. 650; Gorham v. Jackson, 177 N.Y. Sup. 80. "Unless payment of the purchase price or tender thereof is a condition precedent, it is not essential to convert an option into a contract *Page 526 
but only an element of performance." Kritz v. Moon (Ind.),163 N.E. Rep. 112. "In case of doubt, it is presumed that an offer invites the formation of a bilateral contract, by an acceptance amounting in effect to a promise by the offeree to perform what the offerer requests, rather than the formation of one or more unilateral contracts by actual performance on the part of the offeree." 1 Rest. Cont. § 31.
If a contract of sale is silent as to the time of payment, the purchase price is payable upon delivery of the subject of the sale. 55 C.J. 513. Stock certificates are commonly kept in safe deposit boxes. I cannot suppose that complainant usually carried in her handbag the certificate for the Fiduciary Counsel stock, ready for delivery against the possibility that defendant would tender her $5,000. Her offer called for exactly what happened, namely, an acceptance by mail, followed by an arrangement as to hour and place of delivery and payment. The acceptance created the contract. If the parties should fail to agree on the details of execution, the stock would be deliverable and the price payable in accordance with the implied terms of the contract, namely, at the home of the seller on demand within a reasonable time.
An executory contract for the sale of complainant's stock had been made and was binding on both parties before the dividend was declared. Legal title to the shares did not pass until later, when the contract was carried into operation. R.S. 14:8-27 and36. Did the contract operate to transfer the right to the dividend, as between vendor and vendee? Generally, a dividend belongs to him who owns the shares at the time the dividend is declared. Beattie v. Gedney, 99 N.J. Eq. 207. But it is also said, "Even though the contract of sale is merely executory, and payment, or delivery, or both, are postponed, a dividend declared after execution but before complete performance of the contract, inures to the vendee." 18 C.J. § 1122; 13 Am. Jur. 718;Sautbine v. Straub, 5 Fed. Rep. 2d 809; Currie v.White, 45 N.Y. 822; La Fontain v. Brown (Vt.),101 Atl. Rep. 36; L.R.A. 1917 F 551; Thompson v. Exchange Building Co.
(Tenn.), 18 S.W. Rep. 2d 489; 60 A.L.R. 693; Whitney v.Nolan (Mass.), 6 N.E. Rep. 2d 386; Black v.Homoreham, L.R. *Page 527 
(1878), 4 Ex. Div. 24. The reason for the rule appears to be that the dividend reduces the value of the stock; and if the dividend goes to the vendor, the buyer gets less than he bargained for. This reason does not hold good, however, if the earnings of the company between the making of the contract and the performance, equal or exceed the dividend. Indeed, most of the cases from which the rule is drawn emphasize the unusual character of the dividend, the short space between contract and performance, or other factors which tipped the decision toward the buyer. For the purpose of the case before me, I can assume that the rule quoted above is thus qualified. The dividend, $2,700, amounted to over half of the agreed sales price of the Fiduciary Counsel stock, $5,000. Equity requires that it be paid to the buyer of the stock.