96 N.J. Super. 358 (1967)
233 A.2d 77
WILLOW BROOK RECREATION CENTER, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
SUSAN SELLE AND WILLIAM H. SELLE, AND SPREADING OAK, INC., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued June 19, 1967.
Decided July 31, 1967.
*361 Before Judges SULLIVAN, KOLOVSKY and CARTON.
Mr. Harry C. Chashin argued the cause for appellant (Messrs. Marcus & Levy, attorneys).
Mr. Jerome A. Vogel argued the cause for respondents (Messrs. Jeffer, Walter & Tierney, attorneys).
PER CURIAM.
Plaintiff, alleging that it had exercised an option given it to lease defendants' property for 50 years, instituted this action for damages resulting from defendants' refusal to execute and deliver the lease. Defendants' motion for summary judgment was granted and plaintiff appeals. We affirm.
We do not agree with plaintiff's contention that the option could be exercised merely by service of written notice of election to exercise it. Properly interpreted, the writings granting the option required that acceptance of the offer be manifested by written notice of election and "in addition" by payment of the first year's rent of $20,000 on or before July 1, 1966, the date when, as provided in the writings, the option expired. (It may be noted that the only evidence that plaintiff gave "written notice of election" to exercise *362 the option is that to be inferred from the notation on the check hereinafter referred to.)
Since plaintiff concedes that payment of the $20,000 was not made on or before July 1, 1966, we turn to the alternative argument advanced by it, that there had been a valid oral extension of the time for the $20,000 payment so that the option was effectively exercised by the alleged tender of $20,000 within the extended period.
The parties agree that on Friday, July 1, 1966, at about 5 P.M., plaintiff's president, Arnold Oliner, delivered to defendant William H. Selle a check for $20,000 drawn by plaintiff to the order of the defendant corporation, with a notation thereon indicating that it represented rent for one year. (Plaintiff says that on Saturday, July 2, it delivered a check for $20,000 dated July 1, in replacement of the check delivered on July 1 because it was discovered that by reason of a "typographical error" on the first check, the notation thereon read that it represented rent for the period from January 1, 1967 to December 31, 1968 instead of for the period from January 1, 1967 to December 31, 1967). Saturday, July 2, and Monday, July 4, were bank holidays. On Tuesday, July 5, Selle presented the check to the bank on which it was drawn. Plaintiff's account had insufficient funds; the check was protested for nonpayment.
What otherwise transpired is disputed by the affidavits submitted on the motion for summary judgment. In considering the alleged extension agreement and its effect, we accept, as we must on such a motion, the version given for plaintiff in the affidavit of its president Oliner.
Oliner says that when he handed the check to Selle on July 1, 1966, he advised Selle
"that there were not sufficient funds in the bank to cover said check on that date, but that the check would be made good during the normal course of deposit after the July 4th weekend. Mr. Selle advised me that he would hold the check until the middle of the following week,"
*363 and that
"In keeping with my agreement with Mr. Selle, on July 6, 1966, I deposited the sum of $20,000.00 to cover the check which had been issued to the defendant corporation and called Mr. Selle to apprise him of this."
We do not agree with the statement in Oliner's affidavit that the deposit made on July 6, 1966 was "in keeping with [his] agreement with Mr. Selle," "that the check would be made good during the normal course of deposit after the July 4th weekend." Plaintiff's promise, made on July 1, 1966, required that the necessary funds be deposited at least by the close of banking hours on July 5, the first day following the holiday week-end.
Performance of plaintiff's promise to make the necessary deposit was a condition precedent to the enforceability of defendants' alleged agreement to extend the time for exercise of the option. Cf. Duff v. Trenton Beverage Co., 4 N.J. 595, 604 (1950); Colton v. Salomon, 67 N.J.L. 73, 75 (Sup. Ct. 1901). Plaintiff's own proofs establish that it did not comply with that condition precedent within the time limited. It, therefore, cannot seek to enforce the alleged extension agreement, and this even if no problem existed with respect to the enforceability of the alleged oral extension agreement.
In its brief, plaintiff acknowledges that
"In this case, problems arise because there was no apparent consideration for the oral promise to take plaintiff's check and hold it until the middle of the next week and because the law requires agreements concerning an interest in lands to be evidenced in writing."
It argues, however, that under the facts presented, absence of consideration is overcome by application of the doctrine of "promissory estoppel" and that the statute of frauds is not applicable to an agreement granting an extension of time.
*364 We need not dwell on the question of whether the affidavits raise a factual issue as to the existence of a "promissory estoppel" excusing the lack of consideration.
We are satisfied that the statute of frauds requires that an agreement extending the time to exercise an option to lease lands be in writing and that the alleged oral extension in this case is unenforceable.
Such is the ruling of the out-of-state cases which have directly dealt with the question. They have held that oral extensions of options to lease or purchase lands are unenforceable. See Loft, Inc. v. Glen Ridge Realty Corporation, 12 N.Y.S.2d 577 (Sup. Ct. 1939); Conklin v. Caffall, 189 La. 301, 179 So. 434, 437 (Sup. Ct. 1938); Gambill v. Snow, 189 S.W.2d 33 (Tex. Civ. App. 1945); Nason v. Morrissey, 218 Miss. 601, 67 So.2d 506, 509 (Miss. Sup. Ct. 1953); Gulf Oil Corporation v. Willcoxon, 211 Ga. 462, 86 S.E.2d 507 (Sup. Ct. 1955).
Neither counsel nor we have found any reported New Jersey case dealing with the issue, but on principle, the stated result follows from the general rule that a contract which the statute of frauds requires to be in writing may not be modified by a subsequent oral agreement. Kerzner v. Chanin, 98 N.J.L. 38 (Sup. Ct. 1922); Halpern v. Shurkin, 98 N.J. Eq. 28 (Ch. 1925). "A written contract for the sale of land, with parol modification, will not, against objection, be enforced as modified." Halpern v. Shurkin, supra, at p. 29.
Plaintiff seeks to rely on an exception to that general rule exemplified by cases such as Schlecter v. Hollander, 11 N.J. Super. 236 (App. Div. 1951), and Williams v. Sanacore, 11 N.J. Super. 51 (App. Div. 1951), which hold that oral agreements extending the time for performance of contracts within the statute of frauds are valid. The cases relied on by plaintiff all involve agreements extending the time for performance of existing bilateral contracts, e.g. an extension of the date of closing under a contract for the sale of property. Recognition of the validity of an oral extension of *365 time for performance of a bilateral contract is bottomed on the fact that the statute of frauds deals only with the creation of a contract and is silent as to subsequent performance. Nissel v. Swinley, 76 N.J.L. 288, 291 (Sup. Ct. 1908); Long v. Hartwell, Adm'r of Carpenter, 34 N.J.L. 116, 125 (Sup. Ct. 1870).
The exception to the general rule does not apply to this case. This case does not involve the performance of a bilateral contract. It involves an issue as to the creation of a contract by the timely acceptance of an offer in a situation in which the statute of frauds, R.S. 25:1-5 (d), requires the offer and the acceptance to be in writing to be enforceable.
A "paid-for" option is not a bilateral contract. It is a unilateral agreement, an offer irrevocable for the time limited by the option. To ripen into a contract, the offer must be accepted within the time so limited and the acceptance must in every respect meet and correspond with the offer, "neither falling within nor going beyond the terms proposed." Martindell v. Fiduciary Counsel, Inc., 131 N.J. Eq. 523, 524 (Ch. 1942), affirmed 133 N.J. Eq. 408 (E. & A. 1943); McCrory Stores Corp. v. Goldberg, 95 N.J. Eq. 152 (Ch. 1923); Potts v. Whitehead, 20 N.J. Eq. 55 (Ch. 1869), affirmed 23 N.J. Eq. 512 (E. & A. 1872).
An agreement extending the time to exercise an option is equivalent to a grant of a new option for the extended period. That it takes the form of an extension rather than the grant of a new option does not make it immune from the requirement of the statute of frauds which concededly is applicable to agreements granting options to lease or purchase lands.
The judgment is affirmed.
CARTON, J.A.D. (concurring).
I concur in the view that deposit of the check was required to be made on July 5 in order to establish compliance with plaintiff's agreement *366 to make the check good "during the normal course of deposit after the July 4th weekend." Failure to establish such compliance warrants affirmance.
But I do not share my colleagues' opinion that the statute of frauds rendered unenforceable the agreement of the parties modifying the time and method of payment. I consider that acceptance of the check bearing the notation that it represented "advance rent as per lease agreement 1/1/67 to 12/32/67 [sic]," coupled with the allegation in the complaint that the option was exercised, shows sufficient evidence of the terms of the extension and performance to preclude summary judgment on this ground.
Moreover, since the statute has been held not to preclude the enforcement of oral extensions of the time for performance of written contracts for the sale of land, there appears to be no logical reason for treating option contracts differently. The option agreement here involved was executed by both contracting parties; under its terms both parties were obligated to fulfill certain undertakings upon the occurrence of specified conditions. To accord different treatment to such an option agreement on the basis that it is of a unilateral rather than a bilateral character serves no useful purpose and ignores what I believe is the practice of ordinary business men to the contrary.