MICHAEL S. RIDGWAY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ridgway v. Commissioner
Docket No. 44091-86.
United States Tax Court
T.C. Memo 1989-18; 1989 Tax Ct. Memo LEXIS 18; 56 T.C.M. (CCH) 1055; T.C.M. (RIA) 89018; January 11, 1989. Robert H. Williams and Kevin M. Covert, for the petitioner. Michael D. Baker (for trial) and Lisa Primavera-Femia (on brief), for the respondent. WILLIAMS
MEMORANDUM FINDINGS OF FACT AND OPINION WILLIAMS, Judge: The Commissioner determined deficiencies in petitioner's Federal income tax for the taxable years 1980, 1981 and 1982 and an addition to tax for negligence for the taxable year 1981 as follows: Additions to the Tax
Year
Deficiency
§ 6653(a)(1) [1]
§ 6653(a)(2)
1980
$ 1,359.34
--
--
1981
9,243.21
$ 462.16 **
1982
946.00
None
None
After concessions by the parties, *19 the issues remaining are: (1) whether petitioner is taxable on gain from the sale of property under the assignment of income doctrine, and (2) whether petitioner is liable for additions to tax for 1981 pursuant to sections 6653(a)(1) and 6653(a)(2). FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioner, Michael S. Ridgway, resided in Mt. Holly, New Jersey at the time he filed his petition in this case. Petitioner has been at all relevant times a practicing attorney specializing in real estate law. Petitioner's parents are William Ridgway ("William") and Theresa Ridgway ("Theresa"), husband and wife. William, Theresa and their family lived in the residence at 1005 Friendship Lane, Cherry Hill, New Jersey ("the residence") from 1958 until March 1981. William and Theresa owned the residence jointly from 1958 through October 1975. They transferred title to the residence to WGR Associates, a New Jersey limited partnership engaged in the real estate development business, on November 1, 1975. William and Theresa were the general partners of WGR Associates. They transferred their residence to the partnership to reflect it as an asset on the partnership's *20 financial statements. William and Theresa continued to use the residence as their primary residence until March 4, 1981. WGR Associates filed a petition for reorganization under Chapter 11 of the Federal Bankruptcy Code on December 18, 1979. In the course of the bankruptcy proceedings, the residence was proposed for sale. Theresa was very upset on being informed that her residence might be sold. William asked petitioner to try to buy the residence from the bankruptcy estate to prevent a sale that would force the family to vacate their residence. William proposed that petitioner purchase the residence from the bankruptcy estate if he could obtain an FHA mortgage for 90 percent of the purchase price. William and Theresa would buy the residence from petitioner at the same price petitioner paid for it when they were financially able. While petitioner held title to the property, William and Theresa would lease the residence from petitioner for an amount equal to petitioner's monthly mortgage payment. Petitioner agreed to William's proposal. In accordance with his agreement with William, petitioner offered to purchase the residence from the bankruptcy estate at its value appraised *21 for the bankruptcy, viz, $ 59,900. The offer was conditioned on petitioner's obtaining an FHA mortgage which a third party could assume without credit approval. The mortgage arrangement was selected because it would allow William and Theresa to buy the residence at any time despite their not qualifying for a mortgage. Petitioner obtained an assumable FHA mortgage in the amount of $ 52,700 from Kennedy Mortgage Company. The bankruptcy estate sold the residence to petitioner on July 31, 1980. After purchasing the residence, petitioner immediately leased it to William and Theresa for an amount equal to his mortgage payment, $ 592 per month. Petitioner deducted amounts for depreciation and rental expense with respect to the residence on his Federal income tax return in 1980 and 1981. Petitioner concedes that he was not entitled to these deductions. Petitioner did not intend to make a profit from the purchase and later sale of the residence. Approximately six months later, William and Theresa decided to sell the residence and move to a smaller house. The Ridgways did not tell petitioner they intended to sell the residence; they believed it was their house to sell. The Ridgways *22 advertised the residence in the local newspaper and found a buyer at their asking price, $ 79,900. After finding a buyer, the Ridgways told petitioner they were selling the residence and asked him to draw up the necessary documents. Petitioner structured the transaction to minimize transfer costs. In doing so, he drafted an assignable contract of sale between himself and Theresa and an agreement for Theresa to assign the sales contract to the buyers. Petitioner and Theresa Ridgway executed an Agreement of Sale on February 11, 1981, in which petitioner contracted to sell the residence to Theresa Ridgway for $ 59,900, the price at which petitioner had purchased the residence. The Agreement of Sale was made expressly assignable. Petitioner drafted an Assignment Agreement to facilitate Theresa's sale of the property. The parties to the Assignment Agreement, dated February 23, 1981, were Theresa Ridgway and the buyers. The Assignment Agreement provided that, in consideration of the sum of $ 20,000, Theresa Ridgway would assign her right to purchase the residence under the Agreement of Sale to the buyers. The $ 20,000 consideration represented the difference between Theresa's selling *23 price and her purchase price in the Agreement of Sale. The buyers' attorney checked all of the documents after February 11, 1981, and prior to closing. The buyers exercised their right under the assigned Agreement of Sale and acquired the residence from petitioner on March 4, 1981. Petitioner, therefore, transferred title directly to the buyers rather than to Theresa. At closing, the buyers assumed the mortgage on the property held by Kennedy Mortgage Company, executed a second mortgage and a note in favor of Theresa Ridgway in the amount of $ 5,566.21, and gave petitioner a check for $ 19,436.53. Approximately $ 14,000 of the $ 19,436.53 check represented a portion of the $ 20,000 owed to Theresa pursuant to the Assignment Agreement. The rest of the $ 19,436.53 represented petitioner's equity in the property (the down payment he made when he purchased the residence). The $ 5,566.21 mortgage and note also represented a portion of the $ 20,000 owed Theresa pursuant to the Assignment Agreement. William and Theresa reported the $ 20,000 as taxable short-term capital gain on their 1981 Federal income tax return. Petitioner did not file a gift tax return in 1979, 1980, 1981 or *24 1982. After the closing, petitioner held Theresa's $ 14,000 for her, at her request. Theresa asked petitioner to keep the money and give it to her when she asked for it because of the adverse effect the bankruptcy proceedings had had on her. Petitioner kept the funds in his personal account and gave the money to Theresa when she requested it as follows: $ 2,000 on December 6, 1982; $ 3,400 on December 12, 1983; $ 3,000 on June 14, 1984; $ 5,000 on July 13, 1984; and $ 1,182 on May 1, 1986. The Ridgway's residence at the time of trial was titled in Theresa's name alone. Petitioner claimed a nonbusiness bad debt loss of $ 10,000 on his 1980 Federal income tax return. Petitioner deducted $ 3,000 of the loss in 1980 and carried forward the unused portion to 1981 and 1982, taking a $ 3,000 loss deduction in each year. Petitioner concedes that he is not entitled to the bad debt deductions. OPINION At his father's request, petitioner bought his parents' residence out of bankruptcy to keep it in the family. Petitioner and his parents orally agreed that petitioner would sell the residence back to his parents for an amount equal to petitioner's purchase price. Six months later, *25 petitioner's parents decided to sell the residence, and they found a buyer. Petitioner and Theresa executed an Agreement of Sale at their agreed upon price which was equal to petitioner's cost of purchasing the residence out of bankruptcy. By an Assignment Agreement dated February 23, 1981, Theresa assigned her right to purchase under the Agreement of Sale to the buyers for $ 20,000. This price was the difference between the selling price and the amount she had agreed to pay petitioner for her residence. At the closing, petitioner transferred title to the buyers. The buyers assumed the mortgage on the property, gave petitioner a check for $ 19,436.53 and gave Theresa a note for $ 5,566.21. Respondent contends that the gain on the sale of the residence should be taxed to petitioner on assignment of income principles. Petitioner argues that he made a valid gift of an option to purchase the residence at his purchase price. Petitioner further contends that the gift of the option was complete no later than February 11, 1981, at the time Theresa and petitioner entered into the Agreement for Sale. *26 An option to purchase is an agreement that binds the owner of property to sell at the unilateral direction of the option-holder at an agreed price. Saunders v. United States,450 F.2d 1047, 1049 (9th Cir. 1971); Blick v. Commissioner,31 T.C. 611, 622 (1958), affd. 271 F.2d 928 (3d Cir. 1959). The statute of frauds applies to option contracts to purchase real estate in New Jersey. N.J. Stat. Ann. sec. 25:1-5(d)(West 1981); see Willow Brook Recreation Center, Inc. v. Selle,96 N.J. Super. 358, 233 A.2d 77 (1967), cert. denied 51 N.J. 187, 238 A.2d 473 (1968). Oral options to purchase real estate are voidable at the election of the parties. The statute of frauds protects the parties to the transaction; it is not available to strangers to void the oral agreement. McCue v. Deppert,21 N.J. Super. 591, 91 A.2d 503, 505 (1952). *27 If the parties to an agreement that violates the statute of frauds are willing to perform it, a stranger to the agreement cannot object. Zwaska v. Irwin,52 N.J. Super. 27, 144 A.2d 554, 557 (1958). The requirements for a valid inter vivos gift are the following: (1) a donor competent to make the gift; (2) a donee capable of taking the gift; (3) a clear and unmistakable intention on the part of the donor to absolutely and irrevocably divest himself of the title, dominion, and control of the subject matter of the gift, in praesenti; (4) the irrevocable transfer of the present legal title and of the dominion and control of the entire gift to the donee, so that the donor can exercise no further act of dominion or control over it; (5) a delivery by the donor to the donee of the subject of the gift or of the most effectual means of commanding the dominion of it; (6) acceptance of the gift by the donee * * *. Guest v. Commissioner,77 T.C. 9, 16 (1981), citing Weil v. Commissioner,31 B.T.A. 899 (1934), affd. 82 F.2d 561 (5th Cir. 1936), *28 cert. denied 299 U.S. 552 (1936). When a gift of appreciated property is completed prior to a sale of the property by the donee, the gain is taxable to the donee. Humacid v. Commissioner,42 T.C. 894, 913 (1964); Peebles v. Commissioner,5 T.C. 14 (1945). If, on the other hand, a donor enters into a binding contract to sell property prior to giving the property to the donee, the donor is taxable on the gain. See Salvatore v. Commissioner,434 F.2d 600 (2d Cir. 1970). Consequently, if the gain is effectively realized prior to the gift, the transferor is taxable based on assignment of income principles. Commissioner v. Court Holding Co.,324 U.S. 331, 334 (1945); Helvering v. Horst,311 U.S. 112 (1940). Respondent argues that the intent, irrevocable transfer and delivery elements of a valid gift are lacking in this case. Petitioner gave his parents an option to purchase the residence for $ 59,900, *29 the amount he paid the bankruptcy court for the residence. Petitioner's intent to make a gift is clear from the record. We found petitioner and his parents to be credible witnesses. Petitioner did not want his parents to lose their home. After buying their residence out of bankruptcy, petitioner orally agreed that William and Theresa could purchase the residence at any time for $ 59,900, viz, the price he paid for it. Implicit in this agreement was an intent to give Theresa and William any appreciation in value of the residence at the time they chose to exercise the option. The oral agreement initially was voidable by the parties because it violated the statute of frauds. N.J. Stat. Ann. sec. 25:1-5(d)(West 1981). The parties, however, chose to perform the agreement and reduced it to writing. Respondent cannot object to petitioner and Theresa's performing the agreement based on the statute of frauds. New Jersey law gives third parties no capacity to void the agreement. Zwaska v. Irwin, supra.
New Jersey law does, however, affect the timing of the completion of the gift. The gift of the option was not complete until Theresa obtained a written option by *30 entering into the Agreement of Sale with petitioner. Prior to that time, the option was voidable, and petitioner had not irrevocably transferred the option to Theresa. When Theresa and petitioner executed the written Agreement of Sale, the purchase option was irrevocably transferred and delivered to the donee, and the gift was complete. After the gift of the option was completed, Theresa in exchange for $ 20,000 assigned the option to the third party buyers. The Agreement of Sale was not contingent on Theresa's assignment of that Agreement or on consummation of the sale with the third party buyers. Theresa could decide not to sell the residence. Theresa and the buyers merely had an unenforceable oral agreement prior to her assignment to them of the Agreement of Sale. Theresa's subsequent assignment of the Agreement of Sale to the third party buyers occurred after the gift of the purchase option had been completed. Any gain on the sale was, consequently, taxable to her. See Peebles v. Commissioner,5 T.C. 14 (1945). We hold, therefore, that the gain is not taxable to petitioner. Respondent argues that the execution of the Agreement of Sale with Theresa represented *31 an anticipatory assignment of the gain. Respondent contends that petitioner effectively realized the gain when Theresa found a buyer, before the gift was completed. Respondent relies primarily on Estate of Applestein v. Commissioner,80 T.C. 331 (1983). In Estate of Applestein, the taxpayer transferred stock to his children after a merger was approved but before the merger occurred. The Court found the taxpayer had shifted his income to his children; the gain, therefore, was taxable to the taxpayer. 80 T.C. at 342. This case is distinguishable from Estate of Applestein. Petitioner did not negotiate a sale of the residence. Prior to reducing the option to writing, Theresa, not petitioner, conducted sale negotiations. Petitioner had nothing to do with the sale except to create the legal documents effecting Theresa's negotiations. Respondent points out that petitioner in this case actually received some of the proceeds from the sale. Respondent further urges that the substance rather than the form of the transaction should control our decision in this case. Commissioner v. Court Holding Co.,324 U.S. 331 (1945). *32 We agree that the substance of the transaction is controlling. We have found that the gift of the option was completed prior to the sale of the residence, both in substance and in form. The fact that petitioner actually received part of the consideration owed Theresa pursuant to the Assignment Agreement does not, as respondent contends, alter our conclusion. When a purchaser pays sales proceeds to the seller's agent, the income is treated as constructively received by the seller at that time, even though the agent may not turn over the funds until a later year. Diescher v. Commissioner,36 B.T.A. 732, 745 (1937), affd. 110 F.2d 90 (3d Cir. 1940), cert. denied 310 U.S. 650 (1940). The portion of the funds that petitioner received at closing that was part of the $ 20,000 owed Theresa pursuant to the Assignment Agreement was constructively received by and taxable to Theresa. She properly reported this gain as her income. Additions to Tax for Negligence
*33 Section 6653(a)(1), as in effect for 1981, provided for an addition to tax equal to five percent of an underpayment if any part of the underpayment was due to negligence or disregard of the rules or regulations. Section 6653(a)(2) provided a further addition to tax equal to 50 percent of the interest payable on that portion of the underpayment of tax attributable to negligence or intentional disregard of the rules of regulations. Petitioner argues that respondent impliedly limited the specific acts of negligence to the position taken with respect to the sale of the residence. Respondent's notice of deficiency was based on disallowance of rental and bad debt losses for 1980, 1981 and 1982 and inclusion of the gain on the sale of the residence only in 1981. Petitioner concludes that because respondent determined the addition to tax for negligence only for 1981, failure to report the gain on the sale was the sole ground for the determination. Respondent contends that the addition was determined with respect to the entire underpayment. *34 Section 6653(a)(2) imposes an addition to tax for negligence only on the portion of the underpayment of tax attributable to negligence. The section 6653(a)(2) addition was determined with respect to the entire deficiency determined for 1981. Each item of underpayment for 1981 was, therefore, determined to be due to negligence. For purposes of section 6653(a), negligence is defined as lack of due care or failure to do what a reasonable and prudent person would do under the circumstances. Neely v. Commissioner,85 T.C. 934, 947 (1985). We have found that petitioner took depreciation and rental expense deductions on property even though he testified that he lacked a profit motive. In addition, petitioner deducted $ 3,000 as a nonbusiness bad debt loss in 1981 which he concedes was not deductible. Petitioner is a practicing attorney specializing in real estate. He would be familiar, therefore, with general depreciation and rental expense rules. Petitioner has not introduced any evidence to meet his burden of proof with respect to the bad debt deduction. We hold that *35 petitioner was negligent in deducting the depreciation, rental expense, and purported bad debt in 1981. Petitioner is liable, therefore, for additions to tax pursuant to section 6653(a)(1) for 1981 and pursuant to section 6653(a)(2) on the underpayment attributable to the depreciation, rental expense and bad debt deductions claimed by petitioner. To reflect concessions and the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954 as in effect for the years in issue. ** 50 percent of the interest due on $ 9,243.21.↩