Layne B. FOULK and Marjorie E. Foulk, husband and wife, Plaintiffs,

v.

DONJON MARINE COMPANY, INC., Defendant and Third–Party Plaintiff,

v.

BREAKWATERS INTERNATIONAL, INC., Third–Party Defendant.

Civil Action No. 95–323(JEI).

United States District Court, D. New Jersey.

May 12, 1997.

---

Marvin I. Barrish Law Offices by David B. Winkler, Cherry Hill, NJ, for Layne and Marjorie Foulk.

Wiss, Cooke & Santomauro by Raymond R. Wiss, Thomas K. Bouregy, Jr., Hackensack, NJ, for Donjon Marine Company, Inc.

Murphy & O'Connor by Edward R. Murphy, Haddonfield, NJ, for Breakwaters International, Inc.

**OPINION**

IRENAS, District Judge:

Following a commercial diving accident in which plaintiff Layne Foulk became injured, plaintiffs instituted this action sounding in negligence and the general maritime law. The original complaint named as defendants Breakwaters International, Inc. ("Breakwaters") and Donjon Marine Company, Inc. ("Donjon"), respectively, Mr. Foulk's employer and the owner of the barge from which Mr. Foulk was working at the time of the accident. Plaintiffs thereafter amended their complaint to name only Donjon as a defendant. Donjon responded by naming Breakwaters as a third-party defendant and later amended its third-party complaint pursuant to Federal Rule of Civil Procedure 14(c) to add a claim under the Jones Act, 46 U.S.C.App. § 688, against Breakwaters and in favor of plaintiffs.

On April 9, 1997, this Court granted Breakwaters partial summary judgment finding that Mr. Foulk is not a seaman within the meaning of the Jones Act. Breakwaters now moves for summary judgment on the remainder of Donjon's third-party complaint and to amend the final pretrial order. Because Donjon's common-law indemnity claim is barred by the Longshore and Harbor Worker's Compensation Act ("LHWCA"), 33 U.S.C. §§ 901–950, the Court will grant Breakwaters' motion for summary judgment in part and dismiss that claim. Because Donjon's insurance procurement claim against Breakwaters might not fail for want of damages, the Court will deny Breakwaters' motion for summary judgment in part as to that claim. Because Breakwaters' proposed amendment to the final pretrial order would prove futile, the Court will deny Breakwaters' motion to amend the final pretrial order.

## I. BACKGROUND

In 1993, the Borough of Avalon, New Jersey hired Breakwaters to install an artificial reef off its coast to prevent beach erosion. On May 13, 1993, Breakwaters contracted with Donjon to provide material barges, tugs, a floating crane barge, a barge crew, and a commercial dive crew for the project. Donjon agreed to maintain insurance coverage for the project, name Breakwaters as an additional insured on its relevant insurance policies, and supply Breakwaters with certificates of insurance certifying that it had obtained the required insurance. *See* Contract at 14–15, 27–28. Relatedly, Donjon agreed to include in each insurance policy a waiver of each insurer's rights of subrogation against both Donjon and Breakwaters. *See id.* at 14–15.

Donjon duly complied with each of these terms. Donjon added Breakwaters as an additional insured to its existing general liability insurance policy and provided Breakwaters with proof of the addition. *See* Breakwaters' Exs. B, C. As requested, the policy also waived all rights of subrogation against Donjon and Breakwaters:

> Notwithstanding anything to the contrary contained herein, Underwriters [The London Institute Companies ("London")] hereon waive all rights of subrogation whatsoever against each and every named Assured.

London Policy at 51.

On June 30, 1993, Donjon and Breakwaters modified their agreement over the telephone. Since Donjon's divers were non-union and Breakwaters needed to fulfill a union labor project requirement, the parties reversed part of the original arrangement such that Breakwaters rather than Donjon would supply the commercial dive crew. *See* Creter Dep. at 48–49; Witte Dep. at 62. According to Donjon, the parties also reversed part of the insurance arrangement: Breakwaters agreed to provide insurance covering the divers and name Donjon as an additional insured on its relevant insurance policy. Immediately following this conversation, Donjon sent a letter to Breakwaters confirming this modification:

> We wish to confirm our telephone conversation of today's date at which time you advised that you would be supplying certain labor for this project.... We will also require evidence of insurance including seaman's risks with Donjon named as assured for any and all labor provided by you.

Letter from John Witte, President, Donjon, to Richard Creter, President, Breakwaters (June 30, 1993). Breakwaters received the letter that day and raised no objection to its contents. *See* Creter Dep. at 34. However, Breakwaters failed to name Donjon as an additional insured on its commercial general liability insurance policy.

Construction began on July 10, 1993 under Breakwaters' direction. Donjon's crane barge, the Farrell 256, was to install the artificial reef from the sea with the help of an underwater dive crew. Mr. Foulk and three other commercial divers were to assist in the placement of the artificial reef by spotting its location and unhooking pieces of the reef from the crane once they had been placed. For the duration of the project, the dive crew was to sleep ashore and report each morning to the Farrell 256 by motor launch. In addition to its use as a crane barge, the Farrell 256 was to serve as a dive station for the dive crew, holding air compressors, a communications box, and other diving equipment for the project.

On the first day of construction, Breakwaters successfully installed three pieces of the artificial reef in this manner. To connect these to each other and to a pre-existing jetty, the barge crew re-rigged the crane with a "clamshell bucket," filled it with several tons of stone, and lowered it into the water near the jetty. Mr. Foulk swam over to the bucket and began to guide the stone drop when he found himself being pushed through the water towards the jetty. Before he could take evasive action, the clamshell bucket pinned Mr. Foulk against the jetty and severely injured him. Once freed, the Coast Guard rushed Mr. Foulk to a local hospital where doctors treated him for crushed right arm, rib fractures, a collapsed lung, and an injured right shoulder.

On January 6, 1995, while on disability, Mr. Foulk and his wife instituted this action against Donjon and Breakwaters sounding in negligence and the general maritime law. On February 14, 1995, plaintiffs amended their complaint to name only Donjon as a defendant. On March 10, 1995, Donjon an-

swered the amended complaint and named Breakwaters as a third-party defendant, seeking indemnity or contribution. The first count alleges a claim for common-law indemnity and/or contribution, and the second count alleges that Breakwaters failed to procure insurance coverage for Donjon as the parties had agreed. On June 1, 1995, Donjon amended its answer and third-party complaint pursuant to Federal Rule of Civil Procedure 14(c) to add a Jones Act claim against Breakwaters in favor of plaintiffs.

On April 9, 1997, this Court granted Breakwaters' motion for partial summary judgment finding that Mr. Foulk is not a seaman within the meaning of the Jones Act. *See Foulk v. Donjon Marine Co.*, 961 F.Supp. 692 (D.N.J.1997). Consequently, plaintiffs' only avenue of recovery against Breakwaters is the LHWCA.[1] Plaintiffs may still recover against Donjon in negligence, however. Breakwaters now seeks summary judgment on the remainder of Donjon's third-party complaint.

## II. SUMMARY JUDGMENT

### A. *Standard for Summary Judgment*

Under Federal Rule of Civil Procedure 56(c), "summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A non-moving party may not rest upon mere allegations, general denials, or vague statements in opposition to a summary judgment motion. If the non-moving party's evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See Bixler v. Central Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292 (3d Cir.1993); *Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs*, 982 F.2d 884, 880–91 (3d Cir.1992).

---

1. Breakwaters has faithfully complied with its obligations to Mr. Foulk under the LHWCA and

thus plaintiffs assert no LHWCA claim before this Court.

It is not the role of the judge at the summary judgment stage to weigh the evidence or to evaluate its credibility, but to determine "whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The Court must draw all inferences in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, the Court must accept the non-movant's version as true. *See Pastore v. Bell Tel. Co.,* 24 F.3d 508, 512 (3d Cir.1994).

The substantive law governing the dispute will determine which facts are material, and only disputes over those facts "that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. A genuine issue of material fact for trial does not exist "unless the party opposing the motion can adduce evidence which, when considered in light of that party's burden of proof at trial, could be the basis for a jury finding in that party's favor." *J.E. Mamiye & Sons, Inc. v. Fidelity Bank,* 813 F.2d 610, 618 (3d Cir. 1987) (Becker, J., concurring).

B. *Donjon's Indemnification or Contribution Claim*

■ Congress enacted the LHWCA to provide for certain maritime employees a compensation scheme similar to state worker's compensation systems. *See Longmire v. Sea Drilling Corp.,* 610 F.2d 1342, 1349 (5th Cir.1980). It affords benefits to workers regardless of employer fault and provides that an employer's only liability for worker injuries is in the amount specified in the statute. *See Edmonds v. Compagnie Generale Transatlantique,* 443 U.S. 256, 261, 99 S.Ct. 2753, 2756–57, 61 L.Ed.2d 521 (1979); 33 U.S.C. § 905(a). An employer's liability is thus limited, but workers are assured compensation in the event of a job injury. *See Peter v. Hess Oil Virgin Islands Corp.,* 903 F.2d 935, 951 (3d Cir.1990), *cert. denied,* 498 U.S. 1067, 111 S.Ct. 783, 112 L.Ed.2d 846 (1991).

Extending this principle to three-party actions, § 905(b) provides:

In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person … may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void.

33 U.S.C. § 905(b). Thus, even where there is an indemnification agreement between a LHWCA-covered employer and a vessel, the employer may not be held to indemnify the vessel owner for employee injuries. Accordingly, the Court will dismiss the Donjon's claim for common-law indemnification or contribution.

The *Edmonds* case demonstrates the implications of this statutory immunity. There, a jury found a longshoreman ten percent at fault, his employer seventy percent at fault, and a vessel owner twenty percent at fault in causing the longshoreman's injuries. *See Edmonds,* 443 U.S. at 258, 99 S.Ct. at 2755. Imposing joint and several liability and exempting the employer under the LHWCA, the Court held the vessel owner liable for ninety percent of the longshoreman's injuries. *See id.* at 268–71, 99 S.Ct. at 2760–62. The Court further held that the vessel owner could not seek indemnity and contribution from the employer. *See id.*

To avoid any liability to Mr. Foulk, Donjon must thus convince a jury that Donjon was not at all at fault in causing Mr. Foulk's injuries. If the jury concludes otherwise, for example finding Donjon one percent at fault, joint and several liability will require that Donjon compensate Mr. Foulk for its role in the accident *and* for Breakwaters' role in the accident, however large that may be. Further, Donjon (or its insurer) may not then look to Breakwaters for indemnification or contribution.

C. *Donjon's Insurance Procurement Claim*

■ This immunity notwithstanding, a vessel owner may recover from a LHWCA-covered employer on the grounds that the employer failed to procure insurance to protect the vessel owner in case of an accident.

*See Voisin v. O.D.E.C.O. Drilling, Inc.,* 744 F.2d 1174 (5th Cir.1984) (distinguishing between indemnification provisions barred by § 905(b) and insurance procurement provisions like the one asserted in Donjon's third-party complaint), *cert. denied,* 470 U.S. 1053, 105 S.Ct. 1757, 84 L.Ed.2d 820 (1985); *Price v. Zim Israel Navigation Co.,* 616 F.2d 422 (9th Cir.1980) (same).

> Insurance procurement provisions … do not make [an employer] indirectly liable to [a vessel owner]. The purpose of such provisions may well be merely to allocate initially the burden of procuring insurance. The economic burden of the premiums can be allocated as the parties wish. [The employer], for example, in this case may well have borne that burden by paying more for [the vessel's] services. Or [the vessel] may have absorbed the cost. Either way no violation of section 905(b) was involved.

*Price,* 616 F.2d at 429; *see also Voisin,* 744 F.2d at 1177 ("[A]n agreement as to which party should bear the burden of procuring insurance is not an illegal contract of indemnity under section 905(b)."). Since insurance procurement claims thus fall outside the scope of the § 905(b), the LHWCA does not bar Donjon's recovery from Breakwaters under the second count of the third-party complaint.

However, Mr. Foulk's accident is within the scope of the Donjon's general commercial liability insurance policy. *See Camden Fire Ins. Ass'n v. Breakwaters Int'l, Inc.,* No. MRS–L–2259–95, tr. at 32–34 (N.J.Super. Ct. Law Div. Jan. 10, 1997) (Cramp, J.) (ruling

Mr. Foulk's accident within the scope of the London policy). In view of this coverage and because the face value of the policy exceeds plaintiffs' most recent settlement offer, Breakwaters argues that Donjon's insurance procurement claim must fail for want of damages. Donjon (or more accurately London) responds that London will suffer damages if Donjon is found liable and thus Donjon's insurance procurement claim should not fail for want of damages.

■ Subrogation, whether by contract or by law, permits an insurer to succeed to its insured's rights in relation to an insured event. *See Greater N.Y. Mut. Ins. Co. v. North River Ins. Co.,* 85 F.3d 1088, 1094 n. 9 (3d Cir.1996); *Black's Law Dictionary* 1427 (6th ed.1990). Donjon's insurance procurement claim, however, derives from an alleged contract modification and is completely unrelated to the accident claim giving rise to London's coverage. Accordingly, London may not succeed to Donjon's contract claim against Breakwaters. Rather, Donjon's insurance procurement claim must stand or fall on Donjon's damages alone.[2]

■ Nevertheless, the Court will not dismiss Donjon's insurance procurement claim for want of damages. Should the matter go to trial and a jury award plaintiffs an amount in excess of the London policy's coverage, Donjon would be liable to plaintiffs for the excess amount. Similarly, should London become insolvent before the resolution of this matter, Donjon would be liable to plaintiffs for any settlement amount or judgment against it. While these circumstances seem unlikely, Donjon's insurance procurement

---

2. Even if Donjon's contract rights did pass to London, London could not recover from Breakwaters by virtue of Breakwaters' status as an additional insured on the London policy, and by virtue of the expansive waiver of subrogation clause in the London policy. At common law, an insurer may not recover from its insured for losses covered by the insured's policy. *See* 6A John Alan Appleman & Jean Appleman, *Insurance Law and Practice* § 4055 n. 79 (1972 & Supp.1997) (surveying cases); *see also Marathon Oil Co. v. Mid–Continent Underwriters,* 786 F.2d 1301, 1304 (5th Cir.1986); *Keystone Paper Converters, Inc. v. Neemar, Inc.,* 562 F.Supp. 1046, 1050–54 (E.D.Pa.1983). Waiver of subrogation clauses reinforce this implied-by-law provision, but the clauses are not merely redundant where,

as here, an insurer waives "all rights of subrogation whatsoever against each and every named Assured." London Policy at 51. Indeed, because London waived its rights so expansively, it went beyond the common-law rule of subrogation and became unable to subrogate against Breakwaters on claims covered by the policy or on claims arguably outside of the policy. *See Marathon Oil,* 786 F.2d at 1302 (reading a provision waiving "all subrogation" against an additional insured to bar subrogation on claims within and without a policy). Thus, regardless of the scope of the exclusions in the London policy, London would not be able to recover from Breakwaters on Donjon's insurance procurement claim.

claim would not fail for want of damages should they come to pass. Therefore, the Court will deny Breakwaters' motion to dismiss the second count of Donjon's third-party complaint.

### III. MOTION TO AMEND

A court may permit a party to amend a final pretrial order when the danger of surprise or prejudice to the opposing party is small and a failure to amend might result in an injustice to the moving party. *See* Fed. R.Civ.P. 16(e) (permitting modifications to prevent "manifest injustice"); 6A Charles Alan Wright et al., *Federal Practice and Procedure* § 1527 (2d ed.1990). While Breakwaters' proposed amendment regarding the Statute of Frauds would not surprise or prejudice Donjon, the Court will deny Breakwaters' motion as futile. *See Joy Mfg. Co. v. Sola Basic Indus., Inc.,* 697 F.2d 104, 109–110 (3d Cir.1982) (regarding improper amendments to pretrial orders); *cf. Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962) (regarding futile amendments to complaints).

 The New Jersey Statute of Frauds provides that certain agreements or promises are unenforceable unless in writing and signed by the party against whom the agreement or promise is offered. *See* N.J.S.A. §§ 25:1–5 to 1–16. The Statute applies to (1) promises by an executor or administrator to pay an obligation of the estate from his own funds; (2) promises to answer for the debts of another; (3) promises in consideration of marriage; (4) transfers of an interest in real estate; (5) service contracts not capable of being performed within a year from the time of the contract; and (6) business loans for amounts greater than $100,000; and (7) promises by a creditor to refrain from exercising remedies pursuant to covered business loans. *See id.* A modification to a contract must be in writing if the contract, as modified, is within the Statute of Frauds. *See Willow Brook Recreation Ctr., Inc. v. Selle,* 96 N.J.Super. 358, 364, 233 A.2d 77, 80 (App. Div.1967), *certif. denied,* 51 N.J. 187, 238 A.2d 473 (1968).

 As modified, the agreement between Donjon and Breakwaters falls into none of the categories covered by the Statute of Frauds. It does not involve an decedent's estate, marriage, a business loan, or real estate. Neither Donjon nor Breakwaters promises to answer for he debts of another, i.e., guarantee another's loan. The contract is not incapable of being performed within a year. Thus, the modified Donjon–Breakwaters contract does not implicate the Statute of Frauds and Breakwaters' proposed amendment raising the defense would be futile. Accordingly, the Court will deny Breakwaters' motion to amend the final pretrial order to raise a Statute of Frauds defense.

### IV. CONCLUSION

Because Donjon's claim for common-law indemnity or contribution is barred by the LHWCA, the Court will grant Breakwaters' motion for summary judgment in part and dismiss Donjon's first count. Because Donjon's failure to procure insurance claim is not barred by the LHWCA and might not fail for want of damages, the Court will deny Breakwaters' motion for summary judgment. Because Breakwaters' proposed amendment to the final pretrial order would prove futile, the Court will deny Breakwaters' motion to amend the final pretrial order. An appropriate order will issue on even date herewith.